IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: WELLBUTRIN XL          :          CIVIL ACTION
ANTITRUST LITIGATION          :
                              :
                              :          No. 08-2431 (direct)
                              :          NO. 08-2433 (indirect)

MEMORANDUM

McLaughlin, J.                                    July 21, 2010

        The plaintiffs in these two class actions bring suits

against the producers of Wellbutrin XL, Biovail Corp., Biovail

Laboratories, Biovail Laboratories International (together,

"Biovail"), and its distributors, SmithKline Beecham Corp. and

GlaxoSmithKline PLC (together, "GSK"), for illegally conspiring

to prevent generic versions of Wellbutrin XL, or buprorion

hydrochloride, from entering the American market.

        The Court is presented with motions affecting class

representation in both actions.  In the direct purchaser action,

the current class representative Rochester Drug Co-Operative

("RDC") moves for voluntary dismissal without prejudice pursuant

to Rule 41(a)(2) of the Federal Rules of Civil Procedure.  As a

condition of dismissal, RDC seeks to be relieved of its duty to

comply with a discovery order issued by the Court on March 11,

2010.  The Court will dismiss RDC without prejudice, on the

condition that RDC complies with the Court's March 11 Order.

        In the indirect purchaser action, Aetna Inc. ("Aetna")

moves for mandatory intervention pursuant to Rule 24(a)(2) of the

Federal Rules of Civil Procedure and permissive intervention pursuant to 24(b)(1)(B). The Court denies Aetna's motion because Aetna has not fulfilled the requirements for mandatory intervention and permissive intervention is not warranted under these circumstances.

I.   Procedural History

The direct purchaser action began on May 23, 2008, when Meijer Inc. and Meijer Distribution, Inc. ("Meijer") filed a class action complaint against Biovail and GSK. RDC filed its own class action complaint on May 27, 2008. Indirect purchaser Plumbers and Pipefitters Local 572 Health and Welfare Fund ("Local 572") also filed a class action complaint against the defendants on May 23, 2008. Four other indirect purchaser class action complaints were filed in the following two months.

The cases were consolidated into two separate actions in a Stipulated Order dated June 24, 2008. The plaintiffs filed consolidated class action complaints in both actions on July 10, 2008. Biovail and GSK each filed motions to dismiss in both the direct and indirect purchaser actions on September 10, 2008. The Court held a hearing on the motions on February 26, 2009. In a Memorandum and Order dated March 16, 2009, the Court denied the defendants' motions to dismiss the direct purchaser plaintiffs' complaint except for the direct purchaser plaintiffs' claims that

Biovail engaged in substantive monopolization, which were dismissed.

The indirect purchaser plaintiffs amended their class action complaint on March 26, 2009. In the amended class action complaint, the indirect purchaser plaintiffs asserted claims arising out of the laws of 44 states and the District of Columbia. After the amendment, the Court denied the defendants' pending motions to dismiss as moot, and the defendants each filed a motion to dismiss the amended class action complaint on April 30, 2009.

In a Memorandum and Order dated July 31, 2009, the Court held that the indirect purchaser plaintiffs have standing only in those states where the named plaintiffs are located or their members reside or in which the named plaintiffs reimbursed purchases of Wellbutrin XL made by its members. As a result, the Court dismissed a number of the indirect purchaser plaintiffs' claims for lack of standing. The Court dismissed several remaining claims for failure to state a claim, including the indirect purchaser plaintiffs' claims arising under Florida's antitrust law and claims arising under the consumer protection laws of Illinois, Nevada, New York and Ohio. Finally, the Court dismissed the indirect purchaser plaintiffs' unjust enrichment claims and all claims against Biovail that relied on a theory of substantive monopolization. The Court allowed the indirect

purchaser plaintiffs to move forward on six claims: antitrust claims arising under the laws of California, Nevada, Tennessee, and Wisconsin, and consumer protection claims arising under the laws of California and Florida.

After deciding the defendants' motions, the Court held a scheduling conference on August 4, 2009. At the conference, counsel for the direct purchaser plaintiffs urged the Court to establish "truly firm dates which only under extraordinary circumstances ought to be changed." Transcript of August 4, 2009, Scheduling Conference at 66:18-20. In an Order dated August 5, 2009, the Court established a joint schedule for both the direct and indirect actions. A class certification hearing covering both actions was scheduled for May 14, 2010. The Court stated in the Order that the "deadlines are set in stone and will not be continued except for extraordinary circumstances."

The parties then proceeded with discovery in both cases. During discovery, the direct purchaser plaintiffs moved to compel the defendants to produce documents from the underlying patent litigations that formed the basis of the plaintiffs' claim that the defendants engaged in sham litigations. The defendants and the third-party generic drug manufacturers involved in those litigations objected on the ground that the documents were covered by confidentiality or protective orders entered in the underlying litigations. Upon the agreement of the parties, the

Court modified the parties' stipulated protective order to add extra protection to the materials produced from the underlying lawsuits and, in an Order dated December 7, 2009, ordered the defendants to produce documents responsive to the direct purchaser plaintiffs' requests in accordance with the modified protective order. The parties continued with discovery, and the plaintiffs filed their motion for class certification on December 14, 2009.

GSK filed two motions to compel discovery in the direct purchaser action in February of 2010. GSK's first motion, filed on February 18, 2010, was a motion to compel discovery regarding other antidepressants from both Meijer and RDC. The second motion, filed on February 24, 2010, was a motion to compel specifically directed at RDC. Both of GSK's discovery motions requested, in part, that the Court compel the direct purchaser plaintiffs to respond to requests for documents pertaining to their pricing and sales of Wellbutrin XL and other antidepressants. In order to prevail on their antitrust claims, GSK explained, the direct purchaser plaintiffs must show that the defendants possessed monopoly power or restrained trade in a relevant product market. The direct purchaser plaintiffs' complaint alleged a narrow product market, consisting of just Wellbutrin XL and its generic equivalents. GSK sought discovery relevant to showing that Wellbutrin and its generic equivalents

compete in a broader product market.  Such discovery included
information regarding the direct purchaser plaintiffs' pricing
and sale of antidepressants, including internal decision making
documents, which GSK believed would show that the direct
purchaser plaintiffs consider Wellbutrin XL to be interchangeable
with various other drugs.

In response, the direct purchaser plaintiffs did not
argue that such information was burdensome to produce.  Instead,
they objected on the ground that documents pertaining to their
sales and pricing to their customers, including documents
pertaining to their internal decision making on pricing and
sales, comprised impermissible "downstream discovery."  Such
downstream resale information, the direct purchaser plaintiffs
argued, is not relevant in a direct purchaser antitrust action in
which the direct purchaser plaintiffs do not allege an overcharge
theory of damages and do not seek damages relating to lost sales,
profits or other "downstream" injury.

Before GSK had filed its motions, Biovail had filed a
motion to compel discovery directed solely at Meijer.  Its
motion, filed on February 8, 2010, sought, in part, discovery
similar to the discovery sought by GSK, including documents
relating to sales, pricing and internal decision-making and
strategy, from Meijer's assignor, Frank W. Kerr, Co. ("Kerr").
Meijer claimed to be the assignee of Kerr's claims arising out of

purchases of Wellbutrin XL that Kerr made during the class period. Biovail's motion argued that the defendants were entitled to discovery from Kerr and that, apart from incomplete transactional data, Meijer had not produced a single document from Kerr.

Meijer never responded to Biovail's motion. Instead, while the defendants' motions were pending, the Court received a letter from Meijer's counsel dated March 1, 2010. The letter stated that Meijer intended to seek voluntary dismissal because Meijer's counsel was in the midst of a four week trial in Boston, Massachusetts. Counsel stated that Meijer sought voluntary dismissal to avoid disrupting the cases' schedule due to the trial.

The Court held an on-the-record telephone conference on March 3, 2010, and discussed the defendants' motions and Meijer's request for dismissal. During the call, GSK stated its position that Meijer's dismissal should be with prejudice, raising the concern that it would be prejudiced if it could not obtain timely discovery from Meijer and Kerr and that it had been prejudiced by the expense of producing hundreds of thousands of documents responsive to the indirect purchaser plaintiffs' discovery requests. Biovail, however, did not object to the Court's dismissing Meijer without prejudice, reasoning that the expense of pursuing further discovery from Meijer and Kerr and of

defending against two class representatives outweighed any prejudice from dismissal. After some discussion on the issue of prejudice to the defendants, GSK and Biovail both agreed to allow Meijer to be dismissed without prejudice, on the condition that Meijer would not seek to reenter the case as a class representative. Meijer was dismissed by an Order of that date, and Biovail's motion to compel was denied as moot. The portion of GSK's motion to compel discovery regarding other antidepressants that was directed at Meijer was also rendered moot.

In an Order dated March 11, 2010, the Court ordered RDC, the sole remaining class representative of the direct purchaser class, to produce documents responsive to GSK's requests. The Court did not decide whether the discovery requested by GSK was "downstream" or not. The Court found that, because such discovery would be crucial to the defendants' defenses concerning the relevant product market size, the discovery was relevant regardless of whether it was "downstream" discovery.

In an unopposed motion, the defendants requested that the class certification deadlines be extended due to a number of discovery delays. The Court, in an Order dated March 10, 2010, granted the motion and extended the class certification deadlines

and rescheduled the class certification hearing for August 6, 2010.

On April 8, 2010, the Court held a telephone conference at RDC's request. During the conference, RDC's counsel stated that RDC was reluctant to produce certain items compelled by the Court's March 11 Order. RDC's counsel asked the Court to place both the direct and indirect purchaser actions in civil suspense for 30 days while RDC sought a replacement class representative. The defendants did not oppose the request, and the Court placed the cases in suspense.

RDC submitted a letter to the Court dated May 7, 2010, formally stating that it intended to withdraw as the class representative. RDC filed a motion for voluntary dismissal pursuant to Rule 41(a)(2) on May 14, 2010. The same day, the direct purchaser plaintiffs filed a motion to substitute Professional Drug Corporation ("PDC") as the class representative.

Meanwhile, Aetna moved to intervene in the indirect purchaser action on May 13, 2010. The Court held oral argument on the three motions on June 16, 2010.[1]

---

[1]  At oral argument, the parties reached agreement on the direct purchasers' motion to substitute the class representative.

II.  Analysis

        The Court first considers RDC's motion to be
voluntarily dismissed from the direct purchaser action and then
turns to Aetna's motion to intervene in the indirect purchaser
action.


    A.  RDC's Motion for Voluntary Dismissal

        The defendants argue that, if the Court dismisses RDC,
RDC should be obliged to produce the documents compelled by the
Court's March 11 Order as a condition of dismissal and the
dismissal should be with prejudice.

        Rule 41(a)(2) of the Federal Rules of Civil Procedure
provides that an action may be dismissed upon order of the Court,
"on terms that the court considers proper."  Voluntary dismissal
under Rule 41(a)(2) falls within the discretion of the district
court.  Sinclair v. Soniform, Inc., 935 F.2d 599, 603 (3d Cir.
1991).  Dismissal, however, should be generally granted unless it
would subject "the defendant to plain prejudice beyond the
prospect of subsequent litigation."  Westinghouse Elec. Corp. v.
United Elec. Radio & Mach. Workers of Am., 194 F.2d 770, 771 (3d
Cir. 1952), cert. denied, 343 U.S. 966 (1952).

        When considering the effect of a voluntary dismissal
under Rule 41(a)(2), a court must evaluate the presence or extent
of any prejudice to the defendants caused by the dismissal.

10

<u>Ferguson v. Eakle</u>, 492 F.2d 26, 29 (3d Cir. 1974).  Terms and conditions are generally imposed by the district court under Rule 41(a)(2) for the protection of the defendant from such prejudice. 9 Wright & Miller, <u>Federal Practice and Procedure</u>, § 2366 (3d ed. 2008).  Courts have imposed a variety of terms and conditions, including the imposition of costs or attorneys' fees or requirements that the plaintiff produce documents or agree to allow discovery to be used in any subsequent action.  <u>Id.</u>

The Court considers it proper to condition RDC's voluntary dismissal upon its production of the Court-ordered discovery described in the March 11 Order.  RDC filed one of the original complaints in the direct purchaser action.  It, along with the other direct purchaser plaintiffs, urged the Court to move swiftly on its claims.  It requested and received a significant amount of discovery from the defendants and third parties, including sensitive material controlled by confidentiality and protective orders entered in other lawsuits.

RDC now seeks dismissal solely on the ground that the Court has ordered it to produce relevant discovery, such as documents related to its internal business and commercial decision making, that it considers to be sensitive – so sensitive that RDC would not agree to the Court's suggestion of producing such documents under an "attorneys' eyes only" agreement.  The avoidance of an adverse discovery ruling, however, is not a

11

compelling grounds for dismissal without prejudice.  *See, e.g.,* *In re Vitamins Antitrust Litigation*, 198 F.R.D. 296, 304 (D.D.C. 2000) (finding the avoidance of a discovery obligation to be "largely inadequate" as a ground for a motion for voluntary dismissal and to be "somewhat indicative of bad faith").

The defendants also would be prejudiced by such a dismissal.  The discovery at issue comprises a narrow group of relevant documents that go to the heart of the defendants' anticipated defense regarding the size of the relevant product market.  The defendants sought this discovery specifically from RDC because of its status in the market.  The defendants cannot obtain equivalent discovery from the direct purchaser plaintiffs' proposed new class representative, PDC.  RDC has a significantly larger presence in the market than PDC.  GSK avers, and RDC does not dispute, that RDC services over 800 pharmacies in four states and, with annual sales of $464 million as of March 31, 2005, is the tenth largest drug wholesaler in the United States.  PDC, on the other hand, has annual sales totaling less than $10 million, has six employees, and has sales only in southern Mississippi.

As a compromise, RDC has offered to produce transaction price data from its database, showing the prices at which it sells approximately 36 other antidepressants.[2]  Under the

---

[2]    The Court notes that this pricing data is downstream discovery and was not specifically required under the March 11 Order.

12

compromise, RDC would be allowed to withhold its internal
decision-making documents in exchange for producing this data.
This transactional price data is an insufficient replacement for
the discovery ordered by the Court.  The internal decision-making
documents are more relevant and more pertinent to the defendants'
anticipated market-size defense and less burdensome for the
defendants to analyze than the price data that RDC has offered to
produce.

The defendants also request that RDC be dismissed with
prejudice, on the ground that RDC showed a lack of diligence and
unnecessary delay in bringing this motion.  The Court, however,
declines to do so.[3]  Counsel for GSK stated at oral argument that
GSK's primary concern is the discovery at issue.  Transcript of
June 16, 2010, Oral Argument at 8:3-13.  Although RDC seeks
dismissal at a developed stage in the litigation, any prejudice
to the defendants that would result from RDC's dismissal will be
adequately remedied by requiring RDC to comply with the Court's
Order as a condition of dismissal.

---

[3]     Rule 41(a)(2) provides that "[u]less the order states
otherwise, dismissal under this paragraph . . . is without
prejudice."  The rule, therefore, envisions that a court may
order dismissal with prejudice.  See also Wright & Miller, § 2366
("Under certain circumstances, a court as a 'term and condition'
of dismissal, may dismiss an action with prejudice.").

B.    Aetna's Motion to Intervene

Aetna moves for both mandatory and permissive intervention under Rule 24, arguing that it has standing in every jurisdiction in the United States, not just the five states in which the current indirect purchaser plaintiffs have standing.

Mandatory intervention is governed by Rule 24(a)(2) of the Federal Rules of Civil Procedure, which provides, in relevant part,

> [o]n timely motion, the court must permit anyone to intervene who:  (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).   A prospective intervener must satisfy a four-part test for intervention as of right, showing that (1) the application for leave to intervene was timely, (2) the prospective intervener has a sufficient interest in the underlying litigation, (3) there is a threat that the prospective intervener's interest will be impaired or affected by the disposition of the underlying action, and (4) the existing parties to the action do not adequately represent the prospective intervener's interests.  Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3d Cir. 2005).  A prospective intervener must meet each of these requirements.  Id.

14

Rule 24 also provides for permissive intervention and permits a court, on timely motion, to allow anyone to intervene who has a claim or defense that shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b)(1)(b). The rule requires that, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Timeliness is a factor for both mandatory and permissive intervention. <u>Delaware Valley Citizens' Council for Clean Air v. Com. of Pa.</u>, 4 F.2d 970, 973 (3d Cir. 1982). A district court considers three factors to determine the timeliness of an intervention motion: (1) how far the proceedings have gone when the movant seeks to intervene, (2) the prejudice that delay may cause the parties, and (3) the reason for the delay. <u>In re Fine Paper Antitrust Lit.</u>, 695 F.2d 494, 500 (3d Cir. 1982).

Aetna has not provided an adequate reason for the timing of its motion. Aetna's only stated reason for the delay is that it "periodically evaluates" cases in which it has an interest and that such evaluation "takes time." Transcript of June 16, 2010, Oral Argument at 19:21-25. Such a statement does not satisfactorily explain why Aetna seeks intervention at this stage of the litigation, over two years after the complaint was

filed, nine months after several of the claims it seeks to assert were dismissed from the case, after much of the class certification discovery has been conducted, and five months after the plaintiffs filed their motion for class certification.

Intervention would prejudice the defendants by delaying the progress of this case.  The defendants would have to respond to Aetna's complaint and analyze a large number of new claims, potentially leading to the litigation of renewed motions to dismiss.  Intervention would also require a new motion for class certification from the plaintiffs and a significant amount of additional discovery, including volumes of documents and additional depositions, briefing and expert reports.  All of this would return the case to the position it was in nine months before Aetna filed its motion, at least, and delay further progress.

Aetna, however, argues that its motion is presumptively timely.  According to Aetna, the United States Court of Appeals for the Third Circuit has stated that a motion for intervention by an absent class member is presumptively timely if made before an opt-out deadline has passed.  In re Community Bank of Northern Virginia, 418 F.3d 277, 314 (3d Cir. 2005).

That statement, however, must be placed within the context of that case.  In In re Community Bank, the named plaintiffs and the defendants, prior to any discovery, filed a

joint motion for preliminary approval of a proposed nationwide class action settlement. The district court granted the motion less than a week later, adopting the parties' proposed order verbatim. Notice of the settlement was sent out in "early August," and opt-out elections were to be received by October 1, 2003. A group of objectors filed a motion to intervene challenging the fairness of the settlement and arguing that the current class representatives and class counsel inadequately represented their interests. The district court denied their motion without prejudice pending the fairness hearing, and then denied a renewed motion, made orally at the fairness hearing, with little explanation.

The interveners filed their original motion on October 1, 2003, less than two months after they had received notice of the settlement agreement and before the expiration of the opt-out period. The Court of Appeals stated that, under these circumstances, "[t]he time frame in which a class member may file a motion to intervene challenging the adequacy of class representation must be at least as long as the time in which s/he may opt-out of the class." Id. Under that standard, the intervener's motion was presumptively timely. The Court of Appeals, however, remanded the case for the district court to give more thorough consideration as to whether the class would be

prejudiced by the delay and whether the named parties and class counsel provided adequate representation.

The Court of Appeals' reasons for finding the In re Community Bank interveners' motion presumptively timely are not present in this case.  Here, Aetna, with little explanation, seeks intervention nine months after several of the indirect purchaser plaintiffs' claims were dismissed.  Substantial discovery has been conducted, the plaintiffs' motion for class certification has been filed, and the defendants were weeks away from filing their brief in opposition.  Moreover, even if the Court were to presume no delay on Aetna's part, the motion would still be untimely because Aetna's intervention would prejudice the defendants by creating further delay.

Regardless of whether the motion is timely, however, Aetna also fails to meet the third and fourth elements of the test for mandatory intervention.  Aetna fails to meet the third element because, to the extent that Aetna seeks to raise claims for which the plaintiffs have no standing, those claims will be unaffected by the outcome of suit and may be raised in a separate complaint.  Aetna fails to meet the fourth element because, to the extent that Aetna seeks to represent the indirect purchaser class for claims already in this suit, these interests are adequately represented.

Although Aetna has a sufficient interest in this litigation through its status as a putative class member,[4] it has not shown that this interest will be impaired if it is not permitted to intervene. In its motion, Aetna originally argued that its interest would be impaired by res judicata or a potential stare decisis effect from a decision in this lawsuit, arguing that its claims under the laws of all but the five states involved in this suit may be lost or harmed without a class representative with standing in every state. The doctrines of res judicata or stare decisis, however, would not have any effect on claims that are not presented in this litigation. See McLune v. Shamah, 593 F.2d 482, 486 (3d Cir. 1979). Counsel for Aetna conceded this point at oral argument. See Transcript of June 16, 2010, Oral Argument at 21:13-22:7.

Instead, Aetna now argues that, in the absence of a new suit, it will be legally prejudiced if it is not permitted to bring claims for which the current plaintiffs lack standing. Aetna, however, is not barred from bringing such a suit. In fact, Aetna's counsel has stated that it has been given authority

---

[4]    Aetna avers that it provides health care benefits to over 19 million members and pays for Wellbutrin XL in every state in the union. It claims that it has suffered harm as a third party payer who has paid, and continues to pay, for Wellbutrin XL and its bioequivalents.

to file a separate complaint should the Court deny its motion.

Transcript of June 16, 2010, Oral Argument at 37:21-25.[5]

Nor has Aetna shown that the indirect purchaser plaintiffs fail to provide adequate representation for the claims already in this suit. Representation is generally considered adequate unless it is shown that (1) although the intervener's interests are similar to those of a party, they diverge sufficiently and the existing party cannot devote proper attention to the intervener's interests; (2) there is collusion between the representative party and the opposing party; or (3) the representative party is not diligently prosecuting the suit. Brody By and Through Sugzdinis v. Spang, 957 F.2d 1108, 1123 (3d Cir. 1992). Aetna does not allege that (1) the indirect purchaser plaintiffs interests diverge from Aetna's interests,

---

[5]     Aetna again cites to In re Community Bank for the proposition that, "[i]n the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representation." 418 F.3d at 314. This, of course, is true for claims currently present in a litigation. There is no question that a final disposition of the claims currently at issue in this case will affect Aetna's rights as an absent class member. Any other claims it may have, however, will be unaffected by the disposition of this suit.

The same reasoning applies to Aetna's reliance on a case in which it had been permitted to intervene. In re Synthroid Marketing Lit., MDL No. 1182, 1998 WL 526566, at * 2 (N.D. Ill. Aug. 17, 1998). In that case, a proposed settlement would have extinguished any rights by third-party payers, such as Aetna, against the defendants, and those payers were not represented at settlement. Aetna's rights under the laws of the states not represented in this case, however, will not be extinguished by any outcome here.

(2) the indirect purchaser plaintiffs and the defendants have colluded, or (3) the indirect purchaser plaintiffs have not been diligent in prosecuting the litigation.

Instead, Aetna argues that the current plaintiffs provide inadequate representation because their claims in several states were dismissed for lack of standing and because the plaintiffs recently discovered that they may lack standing in California.[6]  The United States Court of Appeals for the Third Circuit, however, has stated that "[a] motion for intervention under Rule 24 is not an appropriate device to cure a situation in which plaintiffs may have stated causes of action that they have no standing to litigate."  McLune, 593 F.2d at 486.  Such causes of action should be brought in a separate suit.  As for the claims for which the indirect purchaser plaintiffs do have standing, Aetna has made no challenge to the adequacy of the indirect purchaser plaintiffs' representation.

Finally, Aetna argues that it should still be permitted to intervene because intervention would promote the efficient and orderly use of judicial resources.  This argument is unavailing

---

[6]     The Court appreciates Aetna and the indirect purchaser plaintiffs' concern that the current plaintiffs may not have standing in California.  Aetna, however, has not requested that it be permitted to intervene solely for purpose of preserving the indirect purchaser plaintiffs' California claims.  The indirect purchaser plaintiffs have stated that they would be amendable to such a motion.  See Indirect Purchasers' Statement in Support of Aetna's Motion, at 6-7.  The Court has not considered whether such a limited intervention would be appropriate.

for mandatory intervention because Aetna has failed to meet the requirements for mandatory intervention under the rule.

Nor does the Court find permissive intervention to be appropriate.  Given the stage of the litigation, intervention would prejudice the defendants by significantly delaying the progress of this case.  Whatever efficiencies may have been achieved in combining Aetna's claims with those of the current plaintiffs at an earlier stage of the litigation have been lost. At this point, any claims that Aetna may have that are not present in this suit will be most efficiently litigated through a separate complaint.

An appropriate order will follow separately.