UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re WELLBUTRIN XL ANTITRUST LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Case No. 2:08-cv-2431<br>Case No. 2:08-cv-2433<br><br><br><br>**Hon. Mary A. McLaughlin** |

**GSK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY ALL PROCEEDINGS PENDING RESOLUTION OF SUPREME COURT PROCEEDINGS IN *IN RE K-DUR ANTITRUST LITIGATION* AND/OR *FTC V. WATSON PHARMACEUTICALS, INC.*, OR, IN THE ALTERNATIVE, FOR EXTENSION OF DISCOVERY DEADLINES**

## TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................. 1 | |
| II. | BACKGROUND .................................................................................................. 3 | |
| III. | LEGAL ANALYSIS ............................................................................................. 6 | |
| | A. The Court Has Broad Powers to Stay Proceedings.................................... 6 | |
| | B. A Stay Will Simplify Issues and Promote Judicial Economy................................ 7 | |
| | C. Plaintiffs Will Not Suffer Any Harm by a Short Stay ........................................ 10 | |
| | D. A Stay Will Likely Be Of Short Duration and Any Delay Is Far Outweighed By the Judicial Efficiencies ................................................. 12 | |
| IV. | IN THE ALTERNATIVE, A SHORT EXTENSION OF THE TIME TO COMPLETE REMAINING DISCOVERY IS NECESSARY......................................... 13 | |
| V. | CONCLUSION.................................................................................................... 15 | |

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Andrx Pharms., Inc. v. Biovail Corp., Int'l*,
    256 F.3d 799 (D.C. Cir. 2001) ................................................................................................. 3

*Ark. Carpenters Health & Welfare Fund v. Bayer AG*,
    604 F.3d 98 (2d Cir. 2010) ....................................................................................................... 3

*Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*,
    No. 11-0011, 2011 U.S. Dist. LEXIS 102743 (D.N.J. Sept. 12, 2011) ............................... 9, 13

*Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*,
    544 F.2d 1207 (3d Cir. 1976) ................................................................................................ 6, 7

*Cent. Valley Chrysler-Jeep, Inc. v. Witherspoon*,
    No. 04-6663, 2007 WL 135688 (E.D. Cal. Jan. 16, 2007) ..................................................... 12

*Cheyney State Coll. Faculty v. Hufstedler*,
    703 F.2d 732 (3d Cir. 1983) .................................................................................................... 7

*FTC v. Watson Pharms., Inc.*,
    677 F.3d 1298 (11th Cir. 2012) ....................................................................................... passim

*FTC v. Watson Pharms., Inc.*,
    No. 10-12729 (11th Cir. July 18, 2012) .................................................................................. 1

*G.R. Homa v. Am. Express Co.*,
    No. 06-2985, 2010 U.S. Dist. LEXIS 110518 (D.N.J. Oct. 18, 2010) ................................ 7, 10

*In re Cardizem CD Antitrust Litig.*,
    332 F.3d 896 (6th Cir. 2003) ................................................................................................... 3

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
    544 F.3d 1323 (Fed. Cir. 2008) ............................................................................................... 3

*In re Effexor XR Antitrust Litig.*,
    No. 11-5479, Dkt. No. 191 (D.N.J. Oct. 23, 2012) ......................................................... passim

*In re K-Dur Antitrust Litig.*,
    686 F.3d 197 (3d Cir. 2012) ........................................................................................... passim

*In re Lamictal Antitrust Litig.*,
    No. 12-995, Dkt. No. 96 (D.N.J. Oct. 23, 2012) ................................................................. 2, 9

*In re Lipitor Antitrust Litig.*,
    No. 12-2389, Dkt. No. 152 (D.N.J. Sept. 14, 2012) ............................................................... 2

*In re Tamoxifen Citrate Antitrust Litig.*,
   466 F.3d 187 (2d Cir. 2005) ........................................................................................... 3

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
   No. 06-1797, Dkt. No. 479 (E.D. Pa. Aug. 29, 2012) ..................................... *passim*

*Landis v. North Am. Co.*,
   299 U.S. 248 (1936) ................................................................................................. 7, 13

*McDonald v. Novartis Pharms. Corp.*,
   No. 07-655, 2007 U.S. Dist. LEXIS 86140 (D.N.J. Nov. 20, 2007) ................... 9, 13

*MEI, Inc. v. JCM Am. Corp.*,
   No. 09-351, 2009 U.S. Dist. LEXIS 96266 (D.N.J. Oct. 15, 2009) .......................... 9

*Resco Prods., Inc. v. Bosai Minerals Grp. Co.*,
   No. 06-235, 2010 WL 2331069 (W.D. Pa. June 4, 2010) .................................. 10, 13

*Schering-Plough Corp. v. FTC*,
   402 F.3d 1056 (11th Cir. 2005) ............................................................................. 3, 5

*SEC v. Infinity Grp. Co.*,
   212 F.3d 180 (3d Cir. 2000) ...................................................................................... 13

*SmithKline Beecham Corp. v. Apotex Corp.*,
   No. 99-4304, 2004 U.S. Dist. LEXIS 13907 (E.D. Pa. July 16, 2004) ........... 6-7, 9, 11

*United States v. Wm. Bounds, Ltd.*,
   No. 10-0420, 2010 WL 2990725 (W.D. Pa. July 28, 2010) ..................................... 10

*Valley Drug Co. v. Geneva Pharms., Inc.*,
   344 F.3d 1294 (11th Cir. 2003) .................................................................................. 3

**OTHER CASES**

*In re Cipro Cases I & II*,
   No. S198616 (Cal. Sept. 12, 2012) ........................................................................ 2, 9

**RULES**

Sup. Ct. R. 10(a) ................................................................................................................ 5

**OTHER AUTHORITIES**

*A Reporter's Guide to Applications Pending Before the Supreme Court of the United
   States,* at 16, *available at* http://www.supremecourt.gov/publicinfo/reportersguide.pdf ........ 12

Alison Frankel, *FTC cert petition puts SCOTUS in pay-for-delay pickle,* Oct. 5, 2012, *available at* http://newsandinsight.thomsonreuters.com/Legal/News/2012/10_-_October/FTC_cert_petition_puts_SCOTUS_in_pay-for-delay_pickle ...................................6

Brief for GPhA as *Amicus Curiae* Supporting Petitioners, *Upsher-Smith*, No. 12-265 (Oct. 1, 2012) ........................................................................................................................5

Brief for N.Y. Intellectual Prop. Law Ass'n as *Amicus Curiae* Supporting Petitioners, *Merck*, No. 12-245 (Sept. 24, 2012) .................................................................................5

Brief for PhRMA as *Amicus Curiae* Supporting Petitioners, *Merck*, No. 12-245 (Sept. 24, 2012) ...............................................................................................................................4

Brief for Wash. Legal Found. as *Amicus Curiae* Supporting Petitioners, *Merck*, No. 12-245 (Sept. 24, 2012) ........................................................................................................ 4-5

Case Distribution Schedule, October Term 2012, *available at* http://www.supremecourt.gov/casedistribution/casedistributionschedule2012.pdf ................12

J. Thomas Rosch, Commission, FTC, Remarks on Pharmaceutical Patent Settlements and the Supreme Court (Sept. 21, 2012)................................................................................6

Margaret Meriwether Cordray & Richard Cordray, *The Solicitor General's Changing Role in Supreme Court Litigation*, 51 B.C. L. Rev. 1323 (2010) ......................................... 5-6

Petition for Writ of *Certiorari, FTC v. Watson Pharms., Inc.*, No. 12-416 (Oct. 4, 2012) ............................................................................................5

Petition for Writ of *Certiorari, Merck & Co., Inc. v. La. Wholesale Drug Co.*, No. 12-245 (Aug. 24, 2012) ...........................................................................................4

Petition for Writ of *Certiorari, Upsher-Smith Labs., Inc. v. La. Wholesale Drug Co., Inc.*, No. 12-265 (Aug. 29, 2012) .......................................................................................4, 5

Defendants SmithKline Beecham Corporation d/b/a GlaxoSmithKline and GlaxoSmithKline plc (collectively, "GSK") hereby submit this memorandum of law in support of their motion to stay all proceedings pending resolution of the proceedings in the Supreme Court of the United States in *In re K-Dur Antitrust Litigation* ("*K-Dur*") and/or *FTC v. Watson Pharmaceuticals, Inc.* ("*AndroGel*").

## I.    INTRODUCTION

In its recent *K-Dur* decision, the Third Circuit declined to apply the "scope of the patent" test for reverse patent settlement cases that has been adopted in the Second, Eleventh, and Federal Circuits, and announced a new "quick look rule of reason" test to review such settlements under the antitrust laws. *See K-Dur,* 686 F.3d 197, 218 (3d Cir. 2012) ("*K-Dur*"). Each defendant in *K-Dur* has filed a petition for *certiorari* asking the Supreme Court to review the Third Circuit's decision, and multiple *amicus* briefs have also been submitted in support of the petitions. Putting the circuit split into sharper focus, two days after the Third Circuit's *K-Dur* decision, the Eleventh Circuit reaffirmed the "scope of the patent" test in *AndroGel* by declining to review *en banc* its earlier panel decision applying that test to uphold a reverse payment patent settlement. *AndroGel*, No. 10-12729 (11th Cir. July 18, 2012) (denying rehearing *en banc* of panel decision reported at 677 F.3d 1298 (11th Cir. 2012)). On October 4, 2012, the Solicitor General of the United States, on behalf of the FTC, filed a petition for *certiorari* with the Supreme Court seeking review of the Eleventh Circuit's decision.

Recognizing the importance and likelihood of Supreme Court review, three different courts, including two in this Circuit, recently granted stays pending the Supreme Court's decision on the *K-Dur* and/or *AndroGel* petitions. *See In re Effexor XR Antitrust Litig.* ("*Effexor*"), No. 11-5479, Dkt. No. 191 (D.N.J. Oct. 23, 2012) (attached hereto as Exhibit A); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 06-1797, Dkt. No. 479 (E.D. Pa. Aug. 29,

2012) (attached hereto as Exhibit B); *In re Cipro Cases I & II*, No. S198616 (Cal. Sept. 12, 2012) (attached hereto as Exhibit C) ("On its own motion, the court stays further briefing in this matter pending action by the United States Supreme Court in [K-Dur], and further order of this court.")  One of the three decisions granting a stay, the *Effexor* decision, is a court in the District of New Jersey in which the direct purchasers are represented by many of the same counsel representing direct purchasers in the instant action.  Additionally, a motion to stay pending *K-Dur* has been filed in one other case in this Circuit challenging a patent settlement on antitrust grounds.  *See In re Lipitor Antitrust Litig.*, No. 12-2389, Dkt. No. 152 (D.N.J. Sept. 14, 2012).  Only one court to consider the issue has denied a stay, and, as described below, that case is at a vastly different stage than the instant case.  *See In re Lamictal Antitrust Litig.*, No. 12-995, Dkt. No. 96 (D.N.J. Oct. 23, 2012) (attached hereto as Exhibit D).

Thus far, the parties here have been pursuing discovery focused exclusively on whether the settlement of the patent litigation pertaining to Wellbutrin XL comports with the brand new standard enunciated in *K-Dur*.  That discovery has involved subpoenas of the relevant generic manufacturers, and reflecting the difficulties common to nonparty discovery, will not be completed by the current fact discovery deadline of November 9, despite the parties' diligence.  Indeed, only one nonparty has produced documents in response to Plaintiffs' or GSK's subpoenas and no depositions have yet taken place.

Given (i) the near certainty that the Supreme Court will accept *certiorari* in at least one of these patent settlement cases and provide guidance to the lower courts regarding how to evaluate such settlements, and (ii) the additional time for fact discovery needed, it makes little sense for the parties to continue with discovery at this time, including nonparty and expert discovery, let alone dispositive motions practice, particularly because these efforts are focused

on a legal standard that may very well change. In these circumstances, there can be no question that the factors considered in granting stays, including judicial efficiency, balancing of harms, and duration of stay, all weigh strongly in favor of staying all proceedings pending resolution of proceedings relating to *K-Dur* and/or *AndroGel* in the Supreme Court. Accordingly, GSK hereby moves to have this matter stayed pending resolution of Supreme Court proceedings in *K-Dur* and/or *AndroGel*. Alternatively, should the Court find that a stay is not warranted at this time, GSK respectfully moves the Court to extend all deadlines in order to permit the parties to complete ongoing discovery, much of which is directed to nonparties.

## II.   BACKGROUND

On July 16, 2012, the Third Circuit issued its decision in *K-Dur*. In that decision, the Third Circuit rejected the approach taken by multiple federal courts of appeals that analyzed whether patent settlements were lawful under the "scope of the patent" test. *See, e.g.*, *AndroGel*, 677 F.3d 1298 (11th Cir. 2012); *Ark. Carpenters Health & Welfare Fund v. Bayer AG*, 604 F.3d 98 (2d Cir. 2010); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 544 F.3d 1323 (Fed. Cir. 2008); *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187 (2d Cir. 2005); *Schering-Plough Corp. v. FTC*, 402 F.3d 1056 (11th Cir. 2005); *Valley Drug Co. v. Geneva Pharms., Inc.*, 344 F.3d 1294 (11th Cir. 2003).[1]

After *K-Dur*, the parties here submitted a proposed, stipulated Order that the Court entered on August 3, 2012, providing for further fact and expert discovery regarding the

---

[1]   As recognized by the *King Drug* court in its Order staying the matter pending resolution of *K-Dur* in the Supreme Court, the Third Circuit's decision in *K-Dur* "also differed somewhat from the approach taken by the United States Courts of Appeals for the Sixth and D.C. Circuits in *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896 (6th Cir. 2003) and *Andrx Pharms., Inc. v. Biovail Corp., Int'l*, 256 F.3d 799 (D.C. Cir. 2001)." *King Drug*, No. 06-cv-1797, Dkt. 479 at ¶ 3 (Ex. B).

settlement transaction.  *See* Stipulation and Scheduling Order, at ¶ 1(a) (08-2431, Dkt. No. 471; 08-2433, Dkt. No. 437).  That Order set a fact discovery deadline of November 9, 2012.  Since the Scheduling Order was entered, Plaintiffs and GSK have engaged in fact discovery regarding the patent settlements at issue here as informed by *K-Dur*.  The parties, among other things, have subpoenaed documents from multiple nonparties, primarily various generic manufacturers, and negotiated with one another and with nonparties concerning the scope of discovery.[2]  To date, despite these efforts, the parties have yet to reach final agreements with all of the nonparties on the appropriate scope of discovery, and only one of the nonparties has produced documents.[3]  Further third-party discovery, including depositions and possibly additional subpoenas for documents, will need to take place after any produced documents are reviewed.

Following the entry of the Scheduling Order, both defendants in *K-Dur* filed petitions for *certiorari* in late August 2012.  Petition for Writ of *Certiorari*, *Merck & Co. v. La. Wholesale Drug Co.*, No. 12-245 (Aug. 24, 2012); Petition for Writ of *Certiorari*, *Upsher-Smith Labs., Inc. v. La. Wholesale Drug Co., Inc.*, No. 12-265 (Aug. 29, 2012).  Since that time, multiple *amicus* briefs have also been filed in support of the two petitions.[4]

---

[2]  A chronology of the parties' efforts to conduct third-party discovery is attached to this memorandum as Exhibit E.  As set forth in the chronology, Plaintiffs did not engage in any discovery, either of GSK or third parties, until GSK had issued its first wave of subpoenas.  In addition to the third-party discovery, GSK produced documents responsive to Plaintiffs' requests on October 22 and yesterday served responses to Plaintiffs' interrogatories and supplemental Rule 26 disclosures.

[3]  GSK only received Watson Pharmaceuticals's first production on October 22 and Watson has indicated that it will produce additional documents on October 26.  The parameters of Watson's production were not negotiated by the parties, instead Watson agreed to produce "relevant, non-privileged documents that are in its possession, custody or control and are responsive to th[e] request[s]," subject to its objections.

[4]  *See* Brief for PhRMA as *Amicus Curiae* Supporting Petitioners, *Merck*, No. 12-245 (Sept. 24, 2012); Brief for Wash. Legal Found. as *Amicus Curiae* Supporting Petitioners,

(continued...)

As a general matter, *certiorari* is more likely to be granted in cases in which "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter . . . or has so far departed from the accepted and usual course of judicial proceedings, or sanctioned such a departure by a lower court, as to call for an exercise of [the Supreme] Court's supervisory power." Sup. Ct. R. 10(a). Here, there is no question that the Third Circuit "entered a decision in conflict" with the decisions of the Second, Eleventh, and Federal Circuits. *See K-Dur*, 686 F.3d at 214 ("[W]e cannot agree with those courts that apply the scope of the patent test."). The direct conflict is particularly sharp because the Third Circuit analyzed precisely the same settlement agreements at issue in the Eleventh Circuit's *Schering-Plough* decision and reached the opposite conclusion from that of the Eleventh Circuit. *See K-Dur*, 686 F.3d at 211-12, 214; *Schering-Plough*, 402 F.3d at 1076; *see also Upsher-Smith Labs.* Petition for Writ of *Certiorari*, at 2 ("It cannot be that a single settlement agreement may violate federal antitrust law in Philadelphia but not in Atlanta.").

The likelihood of Supreme Court review is even greater here, now that the Solicitor General, on behalf of the FTC, has petitioned for *certiorari* of the Eleventh Circuit's decision in *AndroGel*, 677 F.3d 1298, which reaffirmed the "scope of the patent" test. *See* Petition for Writ of *Certiorari*, *FTC v. Watson Pharms., Inc.*, No. 12-416 (Oct. 4, 2012). When the Solicitor General requests *certiorari*, the likelihood of the Supreme Court granting the petition increases dramatically. *See* Margaret Meriwether Cordray & Richard Cordray, *The*

---

(...continued)
  *Merck*, No. 12-245 (Sept. 24, 2012); Brief for N.Y. Intellectual Prop. Law Ass'n as *Amicus Curiae* Supporting Petitioners, *Merck*, No. 12-245 (Sept. 24, 2012); Brief for GPhA as *Amicus Curiae* Supporting Petitioners, *Upsher-Smith*, No. 12-265 (Oct. 1, 2012).

*Solicitor General's Changing Role in Supreme Court Litigation*, 51 B.C. L. Rev. 1323, 1333 (2010) ("At the petition stage, the Court grants approximately 70% of the Solicitor General's petitions for certiorari, an astonishing number compared to the approximately 3% that the Court grants at the request of other litigants.").[5]  It is not surprising, then, that an FTC Commissioner and commentators have expressed the widespread belief that the Supreme Court will grant *certiorari* to resolve the standards under which patent settlements should be reviewed.  In a recent speech given prior to the FTC filing its Petition in *AndroGel*, one Commissioner explained in detail why the Supreme Court is likely to grant *certiorari* in *K-Dur*.  *See* J. Thomas Rosch, Commissioner, FTC, Remarks on Pharmaceutical Patent Settlements and the Supreme Court (Sept. 21, 2012) (attached hereto as Exhibit F).[6]

### III. LEGAL ANALYSIS

#### A. The Court Has Broad Powers to Stay Proceedings

It is well-settled that the Court has "broad power to stay proceedings."  *In re Effexor XR*, No. 11-5479, Dkt. No. 191, at 3 (Order staying proceedings) (quoting *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*, 544 F.2d 1207, 1215 (3d Cir. 1976)).  This power is "'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *SmithKline*

---

[5]  In its Petition, the Solicitor General asserted that *AndroGel* is the preferable vehicle for the Supreme Court to review patent settlements, and it is certainly possible that the Supreme Court would accept the appeal in *AndroGel* and not also in *K-Dur*.  If that is the case, a stay here is still appropriate and necessary because any decision by the Supreme Court in *AndroGel* as to the proper standards used to analyze patent settlements will obviously affect the ongoing vitality of *K-Dur*.

[6]  *See also, e.g.,* Alison Frankel, *FTC cert petition puts SCOTUS in pay-for-delay pickle*, Oct. 5, 2012, *available at* http://newsandinsight.thomsonreuters.com/Legal/News/2012/10_-_October/FTC_cert_petition_puts_SCOTUS_in_pay-for-delay_pickle/.

*Beecham Corp. v. Apotex Corp.*, No. 99-4304, 2004 U.S. Dist. LEXIS 13907, at *23 (E.D. Pa. July 16, 2004) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). How this goal can best be accomplished "'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Id.* "'In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues.'" *Id.* (quoting *Bechtel Corp*, 544 F.2d at 1215).

In determining whether to stay proceedings, courts consider the following factors: "(1) whether a stay will simplify issues and promote judicial economy; (2) the balance of harm to the parties; and (3) the length of the requested stay." *Id.* at *23-24 (citing *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737-38 (3d Cir. 1983)). Here, and as the Court found in *In re Effexor XR*, all three factors weigh heavily in favor of granting a stay pending the outcome of the proceedings of *K-Dur* and *AndroGel* in the Supreme Court. *See In re Effexor XR*, No. 11-5479, Dkt. No. 191, at 3 (considering factors and granting stay) (Ex. A).

**B.   A Stay Will Simplify Issues and Promote Judicial Economy**

A stay is particularly appropriate here because the outcome of the *K-Dur* and/or *AndroGel* petitions for *certiorari* is likely to "'substantially affect'" this action. *See SmithKline Beecham*, 2004 U.S. Dist. LEXIS 13907, at *23 (quoting *Bechtel Corp.*, 544 F.2d at 1215) (stay granted for patent appeals to be litigated through Federal Circuit, and, if necessary, Supreme Court); *G.R. Homa v. Am. Express Co.*, No. 06-2985, 2010 U.S. Dist. LEXIS 110518, at *23-24 (D.N.J. Oct. 18, 2010) (stay appropriate when Supreme Court oral argument scheduled and decision would "govern, or at least be acutely instructive").

Given the Court's grant of summary judgment to GSK and Biovail on Plaintiffs' claims of sham litigation and sham citizen petitions, the only issue still alive in the case – and thus the sole focus of discovery – is whether Biovail's settlement of the underlying patent

litigations gives rise to an antitrust claim, and the appropriate legal standard for this claim is the precise question before the Supreme Court in *K-Dur* and *AndroGel*. Accordingly, the basis for a stay is far more compelling here than in *Effexor*, in which the court granted a stay notwithstanding the pendency of sham litigation and other antitrust claims.

Staying this matter pending the Supreme Court's resolution of *K-Dur* and/or *AndroGel* plainly furthers judicial economy. There is no question that the Third Circuit's decision in *K-Dur* bears directly on the scope of ongoing discovery, as well as the standard of review the Court is to apply to its analysis of the agreements in any dispositive motions. *See e.g.*, Order dated July 20, 2012 (08-2431, Dkt. No. 465; 08-2433, Dkt. No. 434) (reflecting that the Court ordered oral argument in light of *K-Dur*, and the parties' request for additional limited discovery related to the settlement transaction). To move forward with discovery, including discovery of nonparties and expert discovery, dispositive motions practice, and even trial, only to have the Supreme Court announce a different standard for evaluating pharmaceutical patent settlements, would be a waste of resources.

Indeed, three courts have recognized the judicial economy that will ultimately result from a short stay pending resolution of the *K-Dur* and *AndroGel* petitions for *certiorari*. *See, e.g., Effexor*, No. 11-5479, Dkt. No. 191, at 3 (Ex. A) ("A stay will allow for the potential simplification [of] the issues in this case and promote judicial economy, as a Supreme Court decision may clarify the standard that, according to Plaintiffs, governs their reverse payment theories of recovery."); *King Drug*, No. 06- 1797, Dkt. No. 479, at ¶ 6 (Ex. B) ("It makes little sense to rule upon important motions and proceed to a protracted antitrust trial, while the

applicable legal standards governing those motions and trial are subject to review by the Supreme Court."); *In re Cipro Cases I & II*, No. S198616 (Cal. Sept. 12, 2012) (Ex. C).[7]

Other courts in this Circuit are entirely in accord with that outcome in like situations. *See, e.g.*, *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, No. 11-0011, 2011 U.S. Dist. LEXIS 102743, at *4-5 (D.N.J. Sept. 12, 2011) (granting stay pending *en banc* review by Third Circuit regarding applicable standard); *MEI, Inc. v. JCM Am. Corp.*, No. 09-351, 2009 U.S. Dist. LEXIS 96266, at *12-16 (D.N.J. Oct. 15, 2009) (granting stay pending Federal Circuit review of dispositive issue); *McDonald v. Novartis Pharms. Corp.*, No. 07-655, 2007 U.S. Dist. LEXIS 86140, at *7 (D.N.J. Nov. 20, 2007) (granting stay pending Third Circuit review of applicable standard); *SmithKline Beecham Corp. v. Apotex Corp.*, 2004 U.S. Dist. LEXIS 13907, at *32-33 (granting stay pending exhaustion of appeals which would simplify litigation).

In sum, a stay is particularly appropriate here in view of the significant uncertainty surrounding the governing standard, which is likely to be resolved by the Supreme

---

[7] In *Lamictal*, the court denied a stay pending resolution of *K-Dur* in the Supreme Court based on its conclusion that it is unlikely that the Supreme Court will grant *certiorari* and issue an opinion before June 2013. *See In re Lamictal Antitrust Litig.*, No. 12-995, Dkt. No. 96, at 3 (Ex. D). The court reasoned that, "[g]iven that this case is in its initial stages, judicial economy would be best served if the proceedings move forward." *Id.* The circumstances of this case are materially distinguishable from those in *Lamictal*. As set forth above, the likelihood that the Supreme Court will grant *certiorari* is high here, particularly because there are now petitions in two cases, including one filed by the Solicitor General in *AndroGel*, highlighting the direct circuit split. The *Lamictal* court did not mention the *AndroGel* petition, and, as discussed above, the involvement of the Solicitor General is a factor that dramatically increases the likelihood of *certiorari* being granted. Moreover, unlike *Lamictal*, in which the motions to dismiss are still pending, this matter is not in its "initial stages." The parties are in the midst of intensive fact discovery on the single issue raised directly in *K-Dur* and *AndroGel* and are operating on an accelerated schedule. Oral argument on summary judgment is currently scheduled for April 2013, approximately two months before a decision from the Supreme Court is likely, should the Court grant *certiorari*.

Court in the coming months (as explained in section D, below), and which could narrow, refocus, or even eliminate the need for the parties' discovery efforts.

### C.  Plaintiffs Will Not Suffer Any Harm by a Short Stay

The balance of harms also favors a stay because the burdens of proceeding under the cloud of uncertainty far outweigh any concerns that Plaintiffs might have regarding a slight postponement. Courts in this Circuit regularly grant stays under these circumstances. *See G.R. Homa*, 2010 U.S. Dist. LEXIS 110518, at *23-24 ; *United States v. Wm. Bounds, Ltd.*, No. 10-0420, 2010 WL 2990725, at *3 (W.D. Pa. July 28, 2010); *Resco Prods., Inc. v. Bosai Minerals Grp. Co.*, No. 06-235, 2010 WL 2331069, at *7 (W.D. Pa. June 4, 2010).

Here, there is a significant risk that the ongoing efforts of the Court and the parties will be wasted. As discussed above, continuing discovery – including the discovery of nonparty generic manufacturers and law firms as well as expert discovery – and subsequent dispositive motions practice, oral argument and consideration of those motions, and, if necessary, trial, would impose substantial and potentially unnecessary, burdens on the Court, nonparties, and the parties themselves. All ongoing discovery is being shaped by the existing legal standard in *K-Dur*, but the Supreme Court may very well announce a different standard. *See* Stipulation and Scheduling Order, at ¶ 1(a) (08-2431 Dkt. No. 471; 08-2433 Dkt. No. 437).

By way of example, under *K-Dur*, the procompetitive justifications for the terms of any patent settlement agreement may be considered. *See K-Dur*, 686 F.3d at 218. The parties are now undertaking discovery related to that precise issue. This discovery is burdensome and expensive both for the parties and the nonparties that have received broad subpoenas. If the Supreme Court confirms that the scope of patent test is the proper analysis, all of that expensive and burdensome discovery will have been unnecessary. GSK and the nonparties will be significantly harmed by wasteful and unnecessary discovery, not to mention the additional

burden on the parties and the Court if unnecessary motions practice or even a trial is required. Moreover, expert discovery will also be shaped by *K-Dur*, a standard which the Supreme Court may overturn. The time-consuming and expensive process of expert reports and depositions would potentially be wasted.

On the other hand, the risk of harm to Plaintiffs is nearly non-existent. Plaintiffs have no need for immediate resolution to protect their businesses from ongoing harm. To the contrary, the alleged injuries for which they seek only monetary damages occurred no later than June 2008, when there was a generic competitor for Wellbutrin XL in all dosages. Courts routinely grant stays when there is no harm to Plaintiffs. *See, e.g., SmithKline Beecham Corp. v. Apotex Corp.*, 2004 U.S. Dist. LEXIS 13907, at *30 (no harm when party continued to sell materials to generic producers despite pending litigation); *King Drug*, No. 06-cv-1797, Dkt. No. 479, at ¶ 8 (Ex. B) (when generics had entered the market, "there is no concern that delay could cause Plaintiffs additional alleged injury"). Moreover, as noted by the *King Drug* court in entering a stay, "Plaintiffs' desire to proceed toward resolution of this case is certainly understandable. However, to a large extent, the value of such resolution depends upon its finality." *King Drug*, No. 06-cv-1797, Dkt. No. 479, at ¶ 6. The Court in *Effexor* came to the same conclusion, finding that "[w]hile the Court appreciates Plaintiffs' desire for prompt resolution of their claims, Plaintiffs have not pointed to any alleged prejudice that the Court concludes outweighs the interests of judicial efficiency here." *Effexor*, No. 11-5479, Dkt. No. 191, at 3 (Ex. A).

Nor can Plaintiffs make any credible argument that they will suffer harm by failed memories and lost documents. The relevant conduct took place more than five years ago, and a short stay cannot seriously be considered a risk to memory. And the parties have both made

document requests to nonparties who are undertaking collection and review of the requested materials, all but eliminating any risk of losing information. Accordingly, the harm to Plaintiffs, if any, is minimal. *See Cent. Valley Chrysler-Jeep, Inc. v. Witherspoon*, No. 04-6663, 2007 WL 135688, at *15 (E.D. Cal. Jan. 16, 2007) (granting stay pending Supreme Court decision when "as a practical matter, Plaintiffs are unlikely to suffer any inequity or hardship from a six-month stay of proceedings").

Here, because the harm to the Court, the parties, and nonparties would be significant in the absence of a stay, yet only minimal to Plaintiffs if one is granted, the balance of harm weighs heavily in favor of a stay pending resolution of *K-Dur*.

### D. A Stay Will Likely Be Of Short Duration and Any Delay Is Far Outweighed By the Judicial Efficiencies

Here, any stay will be short. The responses to the Petitions for *Certiorari* filed in *K-Dur* and *AndroGel* are due by November 5, 2012 and thus will be fully briefed and ripe for decision by the Supreme Court by its November 30 or December 7, 2012 conferences, with the decisions announced shortly thereafter. *See* Public Information Office of the Supreme Court of the United States, *A Reporter's Guide to Applications Pending Before the Supreme Court of the United States,* at 16, *available at* http://www.supremecourt.gov/publicinfo/reportersguide.pdf (last visited Oct. 22, 2012) (petitions are typically considered within six weeks from filing; cases on conference list generally decided by the following Monday); Case Distribution Schedule, October Term 2012, *available at* http://www.supremecourt.gov/casedistribution/casedistributionschedule2012.pdf (last visited Oct. 22, 2012). Accordingly, the Supreme Court should announce its disposition of the Petitions by early December 2012.

If the Supreme Court denies *certiorari* in both cases, a stay will last only weeks. *See Effexor*, No. 11-5479, Dkt. No. 191, at 3 ("[S]hould the Supreme Court not grant the

certiorari petition, the stay will be relatively short."). If the Supreme Court grants *certiorari*, a decision will likely be rendered by June 2013, the close of the current Supreme Court term. Thus, any stay would likely be in place for eight months at most. Moreover, as the *Effexor* court explained, "[s]hould the Court grant the petition . . . a lengthier stay is justified." *Id*. *See also*, *McDonald*, 2007 U.S. Dist. LEXIS 86140, at *7-8 (granting stay when case briefed and calendared for argument); *Bais*, 2011 U.S. Dist. LEXIS 102743, at *5 (granting stay pending Supreme Court decision within the year); *Resco*, 2010 WL 2331069, at *6 ("[T]he court does not agree with plaintiff's position that staying the proceedings for six to twelve months would be substantially prejudicial.") (citation omitted). Accordingly, even if the Court granted *certiorari*, as is likely, the stay would be relatively short and any cost to the parties would be minimal.

**IV. IN THE ALTERNATIVE, A SHORT EXTENSION OF THE TIME TO COMPLETE REMAINING DISCOVERY IS NECESSARY**

For the foregoing reasons, a stay is appropriate at this juncture to preserve the resources of the Court, the parties, and nonparties. Should the Court not enter a stay of all proceedings, GSK respectfully requests that the Court extend the discovery deadlines to accommodate the nonparty discovery necessary to provide information regarding the procompetitive effects of the settlement. It is well-settled that the Court has the inherent power to control its docket. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254; *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 197 (3d Cir. 2000) ("Matters of docket control and scheduling are within the sound discretion of the district court."). Here, an extension of fact discovery for an additional 90 days, with corresponding extensions of the period for expert discovery and dispositive motions, is appropriate given the nature and status of the third-party discovery that the parties are undertaking.

As discussed above, since the entry of the Scheduling Order on August 3, 2012, the parties have each subpoenaed multiple nonparties for relevant documents.[8] Counsel for GSK, Plaintiffs, and the nonparties have engaged in a meet and confer process related to those subpoenas. To date, only one of the nonparties has produced any documents.[9] After the nonparties produce documents, GSK and Plaintiffs will need to review those materials in order to determine whether further discovery, such as depositions of the nonparties or subpoenas to other nonparties, are needed. Obviously, if depositions are needed, GSK and Plaintiffs will need to work with the nonparties to find agreeable dates for the depositions. Accordingly, although nonparty discovery is underway, the November 9 deadline for fact discovery has become unworkable because of the reasonable need to accommodate nonparties. GSK respectfully submits that an additional extension of 90 days will allow Plaintiffs and GSK to finalize all fact discovery.

---

[8]   GSK subpoenaed Teva Pharmaceuticals USA, Inc. (Aug. 21, 2012), Par Pharmaceutical Companies, Inc. (Aug. 23, 2012), and Watson Pharmaceuticals, Inc. (Sept. 6, 2012). Plaintiffs served subpoenas on Teva (Aug. 27, 2012), Par (Aug. 28, 2012), Watson (Sept. 2, 2012), and also Impax (Sept. 6, 2012).

[9]   As noted above, Watson produced certain documents on October 19, which GSK received on October 22, and indicated it would produce others on October 26.

## V. CONCLUSION

For the foregoing reasons, GSK respectfully requests that the Court enter an order staying all proceedings pending the resolution of *K-Dur* and/or *AndroGel* in the Supreme Court. Alternatively, GSK respectfully requests that the Court enter an amended scheduling order extending the fact discovery deadline, and all subsequent deadlines, by 90 days.

Respectfully submitted,

Dated: October 24, 2012

/s/ Stephen J. Kastenberg
Arthur Makadon (I.D. No. 17104)
makadon@ballardspahr.com
Leslie E. John (I.D. No. 62290)
john@ballardspahr.com
Edward Rogers (I.D. No. 69337)
rogerse@ballardspahr.com
Stephen J. Kastenberg (I.D. No. 70919)
kastenberg@ballardspahr.com
Jason A. Leckerman (I.D. No. 87915)
leckermanj@ballardspahr.com

BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
Phone:  (215) 665-8500
Facsimile: (215) 864-8999

Attorneys for Defendants
SmithKline Beecham Corporation
d/b/a GlaxoSmithKline and
GlaxoSmithKline plc