# Exhibit U

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re WELLBUTRIN XL<br>ANTITRUST LITIGATION | ) )<br>) )<br>) | Civil Action No.:  2:08-cv-2433 |
| THIS DOCUMENT RELATES TO: | )<br>) | Honorable Mary A. McLaughlin |
| INDIRECT PURCHASER ACTIONS | )<br>) | |

**DECLARATION OF KENNETH A. WEXLER IN SUPPORT OF PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS**

I, Kenneth A. Wexler, declare as follows:

1.      I am an attorney in good standing, duly licensed and admitted to the State Bar of Illinois, and the founding partner in the law firm Wexler Wallace LLP.  I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them.  I make this declaration in support of my firm's request for attorneys' fees and reimbursement of litigation expenses, as set forth in Plaintiffs' Application for Attorneys' Fees, Expenses and Incentive Awards.

2.      My firm represents Plumbers and Pipefitters Local 572 Health and Welfare Fund along with Branstetter Stranch and Jennings, PLLC.  This Court appointed my firm Interim Lead Class Counsel in its Pretrial Order No. 1 entered on August 20, 2008 [Docket # 36], and Co-Lead Class Counsel in its Class Certification Order entered August 15, 2011 [Docket #354].  A brief description of my firm is attached as Exhibit 1 and incorporated herein by reference.

3.      My firm kept files contemporaneously documenting all time spent, including tasks performed, and expenses incurred.  All of the time and expenses reported by my firm were incurred for the benefit of the Indirect-Purchaser Plaintiffs (IPPs).

4.      As Co-Lead Counsel, during the course of this litigation, my firm has been involved in a multitude of tasks and activities on behalf of the IPPs.  Such tasks included, but were not limited to: fact investigation and the filing of an initial complaint; engaging in strategic and leadership decisions at the outset of the litigation; working on the consolidated amended complaints and responding to defendants' motions to dismiss; responding to discovery, including the collection, review and preparation of document production and the defense of plaintiff depositions; third party discovery; preparing for and attending depositions of party and third party witnesses;  document review; drafting, arguing, and presenting live testimony in connection with the IPPs' motion for  class certification and subsequent related filings; conducting factual and legal research and analysis where required in connection with pleadings and court filings; drafting and responding to numerous motions and presenting arguments to the

1

Court on the same; hiring and working closely with numerous economic, scientific, and regulatory experts; taking and defending expert depositions; preparing for and briefing summary judgment; engaging in settlement negotiations with Biovail; and preparing the notice plan, preliminary approval motion, and related settlement documents.  These tasks were in addition to leading the litigation, with our Co-Lead Class Counsel, and making critical strategic and legal decisions since the inception of this case.   In addition, we made significant contributions to the plaintiffs' litigation fund.

5.     The hourly rates for my firm's partners, attorneys and professional support staff included in Exhibit 2 are their current rates, and are the usual and customary hourly rates charged for these professionals' services in similar complex litigation.  These time records do not include any time devoted to preparing this declaration or otherwise pertaining to the Fee Petition.  The total number of hours reasonably expended on this litigation by my firm from inception to April 30, 2013 is 13,127.80 hours.  The total lodestar for my firm at current rates is $4,411,842.00. Expense items are billed separately and are not duplicated in my firm's lodestar.

6.     The expenses my firm incurred in litigating this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, receipts, check records and other source materials and accurately reflect the expenses incurred.  My firm incurred a total of $399,570.01 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this litigation.  Of this amount, $308,761.47 was for assessment payments to the litigation fund Co-Lead Class Counsel established for the common expenses incurred in the prosecution of this case, and an additional $90,808.54 was for non-common expenses incurred by my firm, such as travel, meals and lodging, copying, legal research, telephone, etc.  A summary of those expenses by category is attached as Exhibit 3.

7.     In addition to keeping our own contemporaneous time and expense reports, my firm was tasked with regularly collecting detailed time records from all counsel of record from the inception of the litigation until the present time.  These records reflect a total lodestar from

fourteen law firms of $14,833,615.50. A summary of this time is attached as Exhibit 4. My firm has compiled all detailed time and expenses reports from all counsel of record, and will submit them to the Court *in camera* upon request.

8.      My firm was also in charge of the litigation fund, to which firms made contributions to pay for expenses necessary to advance the litigation. In total, firms contributed $1,037,781.47 to the litigation fund. A vast majority of these funds was spent on expert witnesses for class certification and summary judgment (including pharmaceutical sciences experts, economists, and regulatory experts), and the document management platform used to host, review, and code documents. In addition to the litigation fund, counsel of record expended an additional $241,733.39 for legal research fees, filing fees, court reporters, travel for court hearings and depositions, copying fees, and other necessary expenses incident to prosecuting this litigation. The total expenses for this litigation to date are $1,279,514.86. *See* Exhibit 4.

I declare under penalty of perjury under the laws of the United States and the State of Illinois that the foregoing is true and correct. Executed this 15th day of May, 2013, in Chicago, Illinois.

Kenneth A. Wexler

3

# WEXLER WALLACE LLP

# FIRM RESUME

*55 West Monroe Street, Suite 3300*
*Chicago, IL 60603*
*Tel. 312.346.2222*
*Fax 312.346.0022*

*E-mail: info@wexlerwallace.com*
*Website:  www.wexlerwallace.com*

# WEXLER WALLACE LLP

## THE FIRM

Wexler Wallace LLP is a Chicago-based nationally-recognized leader in complex class action and multidistrict litigation, with a commitment to excellence and achieving meaningful relief for our clients.  In short, Wexler Wallace embodies a diverse litigation practice, including antitrust, consumer fraud, securities class action, and mass tort litigation.  We are respected by our clients, judges and co-counsel as a firm that focuses on practical, innovative solutions and demonstrates a dedication to providing the highest quality representation.  Wexler Wallace sets itself apart from other plaintiffs' firms by the commitment we make to our clients, our experience with advanced technology, and our willingness to risk what it takes to achieve results.

We are frequently retained by clients to pursue high-profile, high-stakes litigation.  We also have been retained by co-counsel to work with them and their clients on cases having wide-ranging and significant importance.  We have tried cases and had favorable decisions affirmed on appeal.  In the process, we have helped shape the law and paved the way for future success for our clients and aggrieved plaintiffs generally.  We stand for positive change and have proved it through our repeated successes.

Wexler Wallace is proud to have an AV rating from LexisNexis Martindale-Hubbell.[1]  An AV Peer Review Rating is a testament to the fact that a lawyer's peers rank him or her at the highest level of professional excellence.  In addition, Wexler Wallace was named a Highly Recommended Illinois litigation firm in the inaugural edition of Benchmark Plaintiff.  Our legal team, which includes two partners, two of-counsel, eight associates, three paralegals and a legal nurse, consists of professionals with a broad range of experiences and diverse backgrounds.  In addition, partners in the firm have been selected as "SuperLawyers" and "Rising Stars" on numerous occasions.  Many of our lawyers serve as leaders in charitable institutions, universities, and national, state and local bar associations.

---

[1] Martindale-Hubbell is the facilitator of a peer review rating process.  Ratings reflect the confidential opinions of members of the Bar and the Judiciary.  Martindale-Hubbell Ratings fall into two categories - legal ability and general ethical standards.  CV, BV and AV are registered certification marks of Reed Elsevier Properties Inc., used in accordance with the Martindale-Hubbell certification procedures, standards and policies.

## REPRESENTATIVE ACTIONS AND NOTABLE SUCCESSES

### Health Care Litigation

**Co-Pay Subsidy Litigation (multiple cases)**

On March 7, 2012, Wexler Wallace, with co-counsel, filed seven class actions on behalf of four health benefit funds against major drug manufacturers in federal courts in Illinois, New York, New Jersey, and Pennsylvania. The cases allege that ten major drug manufacturers (Merck & Co., Inc., Pfizer, Inc., Amgen Inc., AstraZeneca, Inc., GlaxoSmithKline, Novartis Pharmaceuticals Corp., Bristol-Meyers Squibb Co., Otsuka America Pharmaceutical, Inc., Gilead Sciences, Inc., and Abbott Laboratories) have paid, and continue to pay, undisclosed kickbacks to privately-insured individuals so that those health plan members choose the drug manufacturers' expensive branded drugs instead of less expensive therapeutic alternatives. Each plaintiff health plan seeks to represent a class of third-party payors that were overcharged for prescription drugs taken by their members as a result of these illegal kickbacks. The complaints allege that these co-pay subsidy programs, which steer plan members toward expensive blockbuster drugs and are estimated to increase health benefit providers' prescription drug costs by $32 billion over the next 10 years, violate federal racketeering and federal antitrust laws.

***In re Lipitor Antitrust Litig.*, No. 12-cv-02389 (D.N.J.)**

Wexler Wallace filed two class actions against Pfizer Inc. and Ranbaxy Pharmaceuticals Inc., among others, seeking damages and equitable relief on behalf of end-payors of Lipitor and/or its generic bioequivalents for violations of antitrust and consumer protection laws. Plaintiffs alleged that defendants fraudulently procured a patent covering Lipitor, and engaged in sham litigation concerning that patent, in order to keep generic versions of the blockbuster drug off of the market. These cases are currently being litigated before the Honorable Peter G. Sheridan.

***In re Skelaxin Antitrust Litig.*, No. 12-cv-00134 (E.D. Tenn.)**

Wexler Wallace and its co-counsel filed this antitrust case on behalf of a class of end purchasers against King Pharmaceuticals, Inc. and Mutual Pharmaceuticals, Inc., alleging that King engaged in sham litigation against a number of potential generic manufacturers of the muscle relaxant, brand name Skelaxin. According to the complaint, King and Mutual also conspired to flood the Food and Drug Administration with baseless Citizen Petitions in an effort to protect the Skelaxin monopoly. In addition, the complaint alleges that King and Mutual entered into an anticompetitive settlement in which Mutual received cash payments, among other things, for helping King keep generics off of the market. As a result of these actions, market entry of generic Skelaxin was delayed for more than three years. This case is currently being litigated before the Honorable Curtis L. Collier.

*United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Company et al.*, **No. 12-cv-00204 (N.D. Ill.)**

In January 2012, Wexler Wallace filed a class action in the United States District Court for the Northern District of Illinois on behalf of the United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund ("UFCW") against Walgreen Company ("Walgreens"), Par Pharmaceutical Companies, Inc. and Par Pharmaceuticals, Inc.  UFCW seeks to represent a class of third-party payors that were overcharged for prescription drugs taken by their members as a result of illegal schemes to switch patient prescriptions.  The complaint alleged that, from July 1, 2001 through 2006, Walgreens and Par engaged in widespread schemes to overcharge self-insured employers, union health and welfare funds, and other private insurers by systematically switching patient prescriptions from less expensive dosage forms to more expensive ones (e.g., from tablets to capsules or vice versa) for the highly-prescribed medications Zantac and Prozac.  Wexler Wallace has appealed the district court's decision dismissing the case to the Seventh Circuit Court of Appeals.

*In re Effexor XR Antitrust Litig.*, **No. 11-cv-5590 (D.N.J.)**

Wexler Wallace has been appointed to the Indirect Purchaser Class Executive Committee in this antitrust, consumer protection and unjust enrichment litigation against pharmaceutical manufacturer Wyeth, Inc. regarding its antidepressant Effexor XR.  The complaint alleges that Wyeth fraudulently obtained a number of method-of-use patents for Effexor XR and engaged in sham litigation against sixteen potential generic competitors in an effort to protect the Effexor XR monopoly.  As part of the scheme, plaintiffs further allege that Wyeth entered into an anticompetitive settlement with the first generic ANDA filer, Teva Pharmaceutical Industries, Ltd., and its US subsidiary Teva Pharmaceuticals USA, Inc., which delayed the entry of generic Effexor XR competitors for more than two years.

*In re Pharmaceutical Indus. Average Wholesale Price ("AWP") Litig.*, **MDL No. 1456 (D. Mass.)**

Wexler Wallace initiated a nationwide wave of class actions against dominant pharmaceutical manufacturers to halt the deceptive reporting of Average Wholesale Prices, or AWPs, which serve as the benchmark from which consumers, union health and welfare funds, insurance companies, and other third-party payors pay for pharmaceuticals.  These cases, which were consolidated in the United States District Court for the District of Massachusetts, alleged that pharmaceutical manufacturers such as Abbott, AstraZeneca, Bristol-Myers Squibb, Baxter, and GlaxoSmithKline routinely inflated the AWPs they reported to trade publications, causing those who purchased and reimbursed for pharmaceuticals to vastly overpay.

Wexler Wallace was a critical part of the trial team against four of the largest defendants in the litigation, which resulted in a verdict largely in favor of the plaintiffs that was affirmed in all respects by the First Circuit Court of Appeals.  In approving a $70 million settlement with a single defendant, the Honorable Patti B. Saris praised Wexler Wallace and their co-counsel, saying that she wanted "to express appreciation again to class counsel for taking this case."  In all, settlements of approximately $350,000,000 have been achieved in the case.

### *New England Carpenters Health Benefits Fund v. First DataBank*, No. 05-cv-11148 (D. Mass.)

Wexler Wallace filed a complaint against pharmaceutical wholesaling giant McKesson Corporation ("McKesson") and pharmaceutical pricing publisher First DataBank, Inc. ("FDB").  Medispan, another publisher, was later named as a defendant in a separate case.  Both FDB and Medispan published data containing the AWPs of various drugs. The litigation concerned an unlawful increase in published AWPs, which caused consumers and third-party payors to overpay for pharmaceuticals.

The Honorable Patti B. Saris granted final approval of plaintiffs' $350 million settlement with McKesson.  Plaintiffs believe this settlement to be one of the *largest* RICO settlements in history.  In addition, plaintiffs entered into a settlement with FDB and Medispan under which the pricing publishers agreed to pay $2.7 million and "rollback" their WAC-to-AWP mark-ups for over 1400 drug codes from 25% to 20%.  The rollbacks were intended to recapture for consumers and third-party payors amounts that were previously overpaid as a result of defendants' scheme and to ensure that, in the future, insurance companies and other third-party payors would pay less for the drugs that were rolled back.  An economist opined that this could achieve an estimated $750 million in prospective savings to the classes.

### *In re Synthroid Marketing Litig.*, MDL No. 1182 (N.D. Ill.)

Although this case was filed while Ken Wexler was with his predecessor firm, this is litigation of which Wexler Wallace is especially proud.  The Synthroid case was one of the first, if not the first, cases brought against a brand name pharmaceutical manufacturer for attempting to suppress generic competition, a practice that significantly increases drug prices.  The Synthroid case settled in 2000 for an aggregate amount of $87.4 million.

### *In re Wellbutrin XL Antitrust Litig.*, No. 08-cv-2433 (E.D. Pa.)

This case is pending before the Honorable Mary A. McLaughlin in the Eastern District of Pennsylvania.  As alleged in the complaint, Defendants GlaxoSmithKline and Biovail unlawfully delayed the entry of generic Wellbutrin XL, a multi-billion dollar blockbuster antidepressant, through sham patent infringement litigation, improper Orange Book

patent listing, baseless Citizen Petition submission, and anticompetitive settlement. With co-lead counsel, Wexler Wallace fought vigorously for, and successfully obtained, certification of an end-payor class in this action.

### *In re Hypodermic Prods. Antitrust Litig.*, MDL No. 1730 (D.N.J.)

Wexler Wallace was appointed co-lead counsel in this multidistrict litigation on behalf of indirect purchasers, and it represents healthcare providers who assert direct purchaser standing, with respect to the purchase of hypodermic products manufactured by Becton Dickenson. These products include such items as disposable syringes and associated needles, disposable blood collection tubes and holders, IV catheter devices and their associated needles. Certain issues in the case, which is being litigated before the Honorable Jose L. Linares, are pending before the Third Circuit.

### *In re Flonase Antitrust Litig.*, No. 08-cv-3301 (E.D. Pa.)

Wexler Wallace serves on the Plaintiffs' Executive Committee in this class action, which alleges that GlaxoSmithKline ("GSK") filed Citizen Petitions with the Food and Drug Administration ("FDA") to keep generic versions of Flonase (fluticasone propionate) off the market. Until the statute authorizing Citizen Petitions was amended due to its abuse by pharmaceutical companies seeking to preserve their monopolies, the filing of a Citizen Petition stayed the FDA's approval of a generic company's application to sell and market a generic drug. Plaintiffs allege that GSK abused the Citizen Petition process in order to preserve its monopoly profits for Flonase. This case is currently being litigated before the Honorable Anita B. Brody, who certified an indirect purchaser class on June 18, 2012.

### *In re Wellbutrin SR Antitrust Litigation*, 04-cv-05898 (E.D. Pa.)

Wexler Wallace represents a proposed class of end-payors in this class action against GlaxoSmithKline, PLC ("GSK"). Plaintiffs allege that GSK engaged in sham litigation to keep generic versions of Wellbutrin SR off the market. Although class certification was initially denied, plaintiffs are seeking to file a renewed motion to certify a more narrowly tailored class. This case is currently being litigated before the Honorable Lawrence F. Stengel.

### *Nichols, et. al v. Smithkline Beecham Corp. ("Paxil")*, No. 00-cv-6222 (E.D. Pa.)

Wexler Wallace served as co-lead counsel in this case involving alleged efforts by GlaxoSmithKine, including "sham" patent litigation, to keep generic versions of Paxil off the market. This case is believed to be one of the first, if not the first, to allege misuse of patents to delay generic competition in a pharmaceutical market brought under Section 2 of the Sherman Act rather than Section 1. The case settled for $65 million.

***In re Prograf Antitrust Litig.*, No. 11-cv-11870 (D. Mass.)**

Wexler Wallace represents end-payors in this class action alleging that Astellas Pharma US, Inc. filed a citizen petition with the Food and Drug Administration ("FDA") to keep generic versions of Prograf (tacrolimus) off the market. The filing of the sham citizen petition delayed the FDA's final approval of at least one generic company's application to sell and market a generic bioequivalent drug. This case is currently being litigated before the Honorable Rya Z. Zobel.

***In re Nexium (Esomeprazole) Antitrust Litig.*, MDL No. 2409 (D. Mass.)**

Wexler Wallace was appointed lead counsel for end-payors in this class action alleging that AstraZeneca and several generic drug manufacturers engaged in a conspiracy to delay market entry of generic versions of Nexium. This case is currently being litigated before the Honorable William G. Young.

## Antitrust Litigation[2]

### *In re Pressure Sensitive Labelstock Antitrust Litig.*, MDL No. 1556 (E.D. Pa.)

Wexler Wallace's client in this antitrust case was the premier supplier of custom label products and one of the largest labelstock purchasers in the country. In this action against manufacturers of labelstock (the base material from which labels are made), the plaintiff's chief financial officer provided crucial testimony relating to the products and pricing behavior at issue in the case. Working closely with the client, Wexler Wallace produced a massive amount of information during discovery. These efforts helped lead to class certification and the eventual settlement of the action. After significant mediation by Kenneth R. Feinberg, a well-known mediator and special master appointed by President Obama in both the BP Gulf Oil Spill and bailout under U.S. TARP, the case settled for an aggregate payment of $46.5 million.

### *In re BP Prods. North America, Inc. Antitrust Litig.*, MDL No. 1801 (N.D. Ill.)

Wexler Wallace was appointed co-lead class counsel in this case filed against BP Products North America, Inc. Wexler Wallace represented indirect purchasers of propane who were injured by BP's unlawful manipulation of the price of TET physical propane after it cornered the TET propane market in February 2004. On February 10, 2010, the Court approved a settlement with BP worth $15,250,000.

### *In re Chocolate Confectionary Antitrust Litig.*, MDL No. 1935 (M.D. Pa.)

Wexler Wallace filed a class action on behalf of all direct purchasers of chocolate from the major manufacturers in the United States, including Hershey, Nestle, Mars, and Cadbury. The complaint alleges that the defendants conspired to raise, fix, maintain, peg and/or stabilize the prices of chocolate from January 1, 2002 through the present, in violation of the Sherman Act and Clayton Antitrust Act. The alleged antitrust violations are also being investigated by the Canadian Competition Bureau and the United States

---

[2] *See In re Lipitor Antitrust Litig.*, No. 12-cv-02389; *In re Skelaxin Antitrust Litig.*, No. 12-cv-00134; *In re Effexor XR Antitrust Litig.*, No. 11-cv-5590 (D.N.J.); *In re Wellbutrin XL Antitrust Litig.*, No. 08-cv-2433 (E.D. Pa.); *In re Hypodermic Prods. Antitrust Litig.*, MDL No. 1730 (D.N.J.); *Nichols, et. al v. Smithkline Beecham Corp. ("Paxil")*, No. 00-cv-6222 (E.D. Pa.); *In re Flonase Antitrust Litig.*, No. 08-cv-3301 (E.D. Pa.); *In re Wellbutrin SR Antitrust Litig.*, 04-cv-05898 (E.D. Pa.); *In re Prograf Antitrust Litig.*, No. 11-cv-11870 (D. Mass.), and *In re Nexium (Esomeprazole) Antitrust Litig.*, MDL No. 2409 (D. Mass.), discussed above under the heading "Health Care Litigation." Each is an antitrust case.

Department of Justice. This multi-district litigation now involves over 75 federal actions, and has been consolidated for pretrial proceedings in the United States District Court for the Middle District of Pennsylvania.

### In re OSB Antitrust Litig., No. 06-cv-00826 (E.D. Pa.)

Wexler Wallace represented direct purchasers in this antitrust class action against Louisiana-Pacific Corporation, Weyerhaeuser Company, Georgia-Pacific Corporation, Potlatch Corporation, Ainsworth, Norbord, Inc., J.M. Huber Corporation, and Tolko Industries, Inc. Plaintiffs alleged that these defendants combined and conspired to fix prices at which Oriented Strand Board (OSB) was sold by reducing the available supply in violation of antitrust laws. The case, which was pending in the United States District Court for the Eastern District of Pennsylvania, settled for $120 million.

### In re Fretted Instrument Products Antitrust Litig., MDL No. 2121 (S.D. Cal.)

Wexler Wallace was the first among dozens of firms to file nationwide antitrust class actions alleging that competitors in the musical instrument product industry, facilitated by their trade association, the National Association of Music Merchants, Inc. (NAMM), conspired to fix prices of their products through unlawful information exchanges. The Federal Trade Commission ("FTC") issued a cease and desist order to NAMM settling the FTC's charges that it had "permitted and encouraged'" acts constituting violations of the FTC Act. Specifically, the FTC, after an investigation, alleged that between 2005 and 2007, NAMM organized various meetings and programs for its members, such as Guitar Center, Inc., at which these competing retailers of musical instruments were permitted and encouraged to exchange competitively sensitive information, strategies for implementing minimum advertised pricing and other information enabling them to restrict retail price competition.

### In re Comcast Set Top Cable Television Box Antitrust Litigation, MDL No. 2034 (E.D. Pa.)

Wexler Wallace brought this antitrust class action on behalf of Comcast customers who purchased premium cable television services from Comcast, but were forced to rent a set-top box for Comcast in order to view or access these services. Consolidated with several other pending actions, the Complaint alleges violations of both federal and certain state antitrust laws. Wexler Wallace played a critical role in discovery and briefing on the enforceability of the arbitration clause contained in Comcast's consumer contracts in light of the Supreme Court's decision in AT&T Mobility LLC v. Concepcion, 563 U.S. ___ (2011), and is awaiting a ruling on Comcast's motion to compel arbitration from the Eastern District of Pennsylvania.

***In re Air Cargo Shipping Services Antitrust Litigation*, MDL No. 1775 (E.D.N.Y)**

Wexler Wallace is one of a multitude of law firms bringing this massive antitrust case against over twenty aircraft carriers that provide shipping services around the world. The action arises from the defendants' massive global conspiracy to fix or stabilize the prices of air freight shipping services. The complaints allege that the defendants and their co-conspirators acted in concert pursuant to a single, overarching conspiracy to artificially inflate the prices of shipping air cargo worldwide. Over three years ago, defendants Deutsche Lufthansa AG, Lufthansa Cargo AG, and Swiss International Air Lines Ltd. settled for $85 million. On March 14, 2011, the Court entered its Orders Approving the Settlement Agreement and Final Judgment regarding four more settlements. There have been hundreds of millions of dollars in settlements received.

## Consumer Protection

### *Schmitz et al., v. Wal-Mart Stores, Inc.*, No. 11-cv-01487 (E.D. Cal.)

In this class action against retailer behemoth Wal-Mart Stores, Inc., Wexler Wallace represents consumers who returned items with a gift receipt but did not receive the full purchase price.  The complaint alleges that when its stores are presented with a gift receipt, Wal-Mart fails to honor the product purchase price, and instead redeems the receipt for the later discounted or sale price.  Consumers reasonably assume that providing a gift receipt with their gift will entitle the recipient to credit for the full purchase price.  Wal-Mart's practice of refunding less than the purchaser price relies on the fact that people generally do not ask how much their gift-giver paid for their gift, and that recipients rarely tell the gift-giver that they returned it. These common behaviors combine to create a deceptive business practice that is virtually certain to go undetected.

### *In re Pet Food Products Liability Litig.*, MDL No. 1850 (D.N.J.)

Wexler Wallace served as co-lead counsel in this consumer multidistrict litigation arising from the largest pet food recall in history, involving over 180 brands of products produced or sold by over 40 defendants.  The action, which was pending before the Honorable Noel L. Hillman in the United States District Court for the District of New Jersey, sought compensation for pet owners throughout the country for financial and other harm suffered when their pets ate contaminated pet food.  Judge Hillman granted final approval of a comprehensive $24 million settlement that provided aggrieved pet owners an unusually large percentage of their economic damages.

### *In re Webloyalty.Com, Inc. Marketing and Sales Practices Litig.*, MDL No. 1820 (D. Mass.)

Wexler Wallace served as co-lead counsel in this consumer multidistrict litigation concerning deceptive Internet marketing and selling strategies, unauthorized charges on consumers' credit cards and non-cancellation of memberships.  Consumers became enrolled in Webloyalty's programs in the course of transactions for other online purchases, typically through "pop-up" advertisements.  The Honorable Joseph L. Tauro approved a nationwide settlement unprecedented in a case of this type that allowed consumers to recover up to 100% of unauthorized charges for enrollment in any Webloyalty membership program.  The settlement also required that significant changes be made to disclosures on Webloyalty enrollment pages as well as post-enrollment notifications regarding program enrollment and membership fees.

***In re DirecTV Satellite Receiver Lease Fee Litig.*, No. 08-cv-01558 (C.D. Cal.)**

Wexler Wallace is prosecuting a consumer class action in federal court against DirecTV, pending before the Honorable Florence-Marie Cooper in the United States District Court for the Central District of California, alleging that the company misleads customers into believing they own the satellite receivers when, in reality, DirecTV considers the purchase to be a "lease" subject to monthly fees. The case seeks, among other things, a ruling that DirecTV customers own their equipment and that DirecTV's purported leases are invalid. Plaintiffs also seek corrective disclosures and a return of improperly charged lease fees.

***In re RC2 Corp. Toy Lead Paint Products Liability Litig.*, MDL No. 1893 (N.D. Ill.)**

Wexler Wallace filed this class action suit against the RC2 Corporation, which manufactures the popular line of children's toys, "Thomas & Friends Wooden Railway Toys." Wexler Wallace filed the lawsuit on behalf of all consumers who purchased various Thomas & Friends toys during the class period. Plaintiffs alleged that RC2 failed to inspect and test toys after they were imported from manufacturers based in China and before they were sold to the public. A settlement favorable to the class was granted final approval.

***Online Merchant Sys., LLC v. Overture Servs., Inc. and Yahoo, Inc.*, No. 05-cv-4833 (C.D. Cal.)**

Wexler Wallace served as co-lead counsel in this consumer class action on behalf of an online advertiser asserting that Yahoo's online advertising system caused online advertisers to pay more than they otherwise would have for the same advertising space, and that the class' bidding behavior was altered as a result of Yahoo's unlawful conduct. Plaintiffs obtained a favorable settlement in this matter.

***Casillas v. Wal-Mart Stores, Inc.*, No. 2:06-cv-00571 (C.D. Cal.)**

Wexler Wallace filed this proposed class action on behalf of California consumers who were charged higher prices at Wal-Mart checkout counters than what were advertised on store shelves. Plaintiffs alleged that overcharges occurring at Wal-Mart scanner check-outs were almost double the national average. Such overcharges are often difficult to detect, and the amount of an individual overcharge deters consumers from seeking remedies at Wal-Mart stores. A settlement of this action was approved, which provided significant injunctive relief applicable to all of Wal-Mart's California stores.

***Ellerbrake v. Campbell-Hausfeld*, No. 01 L 540 (St. Clair County, Illinois)**

Wexler Wallace served as co-lead counsel in this consumer fraud case brought against power tool manufacturers for mislabeling the horsepower on their air compressors.

After the firm achieved certification of the consumer class, the defendants agreed to a permanent injunction that halted the alleged mislabeling and provided millions of dollars' worth of benefits to affected consumers.

### Ortiz v. CVS Pharmacy, Inc., et al., No. 09-cv-1050 (C.D. Cal.)

Wexler Wallace filed this class action suit in the Central District of California on behalf of California consumers who were charged excessive fees by CVS Pharmacy for copies of and/or searches for their prescription drug records. California and federal law require that healthcare providers, such as CVS Pharmacy, make prescription records available to patients and charge them reasonable, cost-based fees for inspecting, copying and retrieving such records. This case is currently pending before the Honorable James V. Selna.

### Simon v. Toshiba America, Inc., et al., No. 07-cv-6202 (N.D. Cal.)

Wexler Wallace served as class counsel in this consumer class action against notebook computer manufacturer Toshiba, based on its marketing and sale of particular model notebooks with incorrectly stated memory upgrade capacity. The case, which was pending before the Honorable Marilyn Patel in the United States District Court for the Northern District of California, settled on terms offering significant relief to consumers.

### Ronald Carter v. Allstate Insurance Company, et al., No. 02-CH-16092 (Cir. Ct. Ill., Cook County)

Wexler Wallace served as co-lead counsel in a recently-settled class action against Allstate, alleging that the company refused to pay its policyholders either their replacement cost or the limits of liability under the Residential Fire Insurance Policy after fire damaged the insureds' premises. Rather, the complaint alleged, Allstate improperly settled policyholders' claims based on a market value appraisal that Allstate secures for property. This appraisal method resulted in a reduced recovery by the insureds, in violation of the terms of their insurance policies. After years of hard-fought litigation, including two interlocutory appeals, the parties agreed to a settlement that provided substantial cash recovery on a class-wide basis. The Circuit Court of Cook County, Illinois granted final approval of that settlement in 2012.

### Exhaust Unlimited, Inc. v. Cintas Corporation, et al., No. 02-cv-00614 (S.D. Ill.)

Wexler Wallace investigated and pursued claims against a $10 billion service linen supply industry that imposed "ancillary charges" on their customers, such as "Environment Charges," that, despite their appearance and placement on invoices, were not imposed by federal or state governmental laws or regulations and were not an actual pass-through of any tax or other cost. This litigation, which was pending in

13

various courts throughout the country, settled for substantial injunctive and monetary relief.

***In re Sony DVD Litig.*, No. 03-L-210 (Cir. Ct. Ill., St. Clair Cty.)**

Wexler Wallace served as co-lead counsel in this consumer class action involving a DVD/DVP line of video disc players manufactured and sold by Sony, alleging that Sony failed to disclose that the DVD players contained uniform defects that rendered them unable to consistently and clearly play DVDs. After the plaintiffs achieved class certification, the parties reached a favorable nationwide settlement.

***E.K.D., et al. v. Facebook, Inc.*, No. 12-cv-01216 (N.D. Cal.)**

Wexler Wallace, with co-counsel, are prosecuting this case against Facebook on behalf of a nation-wide class of minor Facebook users whose names and/or likenesses were used by Facebook for commercial purposes without the prior consent of their parents or legal guardians.

The Complaint alleges that Facebook uses minors' names and profile pictures without appropriate consent for their endorsements. The endorsements constitute advertisements, or "social ads," and "sponsored stories," which generate "click" revenue paid to Facebook by advertisers every time a user clicks through an ad to the advertiser's landing page. Facebook places minors' names and likenesses on advertisers' Facebook pages whenever the minor clicks on a button indicating that they "Like" the advertiser's brand, good, or service, or responds to the advertiser's event. In addition, Facebook transmits the names and pictures of these underage users to their Facebook Friends' home page.

This case involves substantial important issues in the face of changing technology, including the safety and privacy of minor children on the Internet and guaranteed privacy protections provided for by statute and the common law.

***Hackett v. BMW of North America*, No. 10-CH-46882 (Cir. Ct. Ill., Cook County)**

On October 28, 2010, Wexler Wallace filed a class action in Illinois state court against BMW North America on behalf of Illinois owners of certain model BMW vehicles equipped with N54 3.0 liter engines. Consumers around the country have alleged that these vehicles are affected by a distinct design and/or manufacturing defect relating to BMW's newly-designed fuel injection system. The system was supposed to have incorporated a new "state of the art" fuel pump responsible for injecting fuel into the pistons. Plaintiffs allege, however, that the new fuel pump is defective, requiring replacement within the first 1,000 miles of ownership. The fuel pump defect also raises serious safety concerns, as power failure can occur at high speeds and create unsafe driving conditions. A settlement was reached with BMW that resolved all litigation

relating to the fuel pumps and waste gate defects.  The settlement provides a warranty extension for the defective parts, cash payments to certain consumers who had their fuel pumps replaced before a recall was announced, and other remedies to vehicle owners.

**Mass Tort Litigation**

***In re Kugel Mesh Hernia Patch Litig.*, MDL No. 1842 (D.R.I.)**

Wexler Wallace represents individuals who have had defective Composix Kugel Mesh hernia repair patches implanted in their bodies.  The firm is a member of both the State and Federal Plaintiff Steering Committees, is chair of the law committee and is a member of the trial team.  At the direction of the Food and Drug Administration, C.R. Bard and Davol announced a recall of the large and extra-large varieties of their surgically implanted hernia repair patches, known as the Composix Kugel Mesh Patch. Despite knowledge of the defective design and manufacture of these patches, C.R. Bard and Davol failed to alert physicians about potential problems and sold roughly 75,000 patches.  The plaintiffs whom Wexler Wallace represents all suffered serious injuries from the failure of their patches.

***In re Medtronic, Inc. Implantable Defibrillator Prods. Liab. Litig.*, MDL No. 1726 (D. Minn.)**

Wexler Wallace filed suit on behalf of United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund seeking to certify a class of other third-party payors (including other union health and welfare benefit plans), as well as many personal injury claimants, to recover the cost of explant surgery and related medical expenses necessitated by the recall of Medtronic's implantable cardiovertable defibrillators ("ICDs") and cardio resynchronization therapy defibrillators ("CRT-Ds"). These ICDs and CRT-Ds were recalled for prematurely failing after implantation in patients who had spontaneous and/or inducible life-threatening ventricular arrhythmias and patients who are at high risk for developing such arrhythmias.  An arrhythmia is a cardiac rhythm that is out of syncopation, which can cause myocardial damage, a myocardial infarction (heart attack) and/or death.  The expense of explanation and re-implantation of replacement ICDs and CRT-Ds is enormous and falls largely on third-party payors.  The federal district court approved a settlement for over $75 million in this case, benefitting third-party payors and personal injury claimants.

***In re Guidant Defibrillators Products Liability Litig.*, MDL No. 1708 or No. 0:05-md-01708 (D. Minn.)**

Wexler Wallace represented numerous personal injury claimants, as well as third-party payors (which include union health and welfare benefit plans), in this multidistrict litigation to recover damages as a result of the nationwide recall of Guidant's implantable cardiovertable defibrillators and cardio resynchronization therapy defibrillators.  After significant litigation, Guidant resolved the cases in the multidistrict litigation for $195 million.

**DePuy Metal-on-Metal Hip Litigation**

On August 26, 2010, DePuy Orthopedics, Inc., a division of Johnson & Johnson, announced a worldwide recall of two hip implant systems – the ASR™ XL Acetabular System and the ASR™ Hip Resurfacing System. DePuy has estimated that 93,000 total devices have been implanted worldwide.  If they have not already experienced hip failure, people with these implants will likely suffer injuries including dislocation, infection, constant pain, as well as symptoms associated with Metalosis, a condition that results when the metal-on-metal hip components of these implants wear down and displace metal into the body.   These injuries will require these hip implantees to undergo costly, painful, and life threatening revision surgeries.   Wexler Wallace currently represents hundreds of individuals who have had Metal-On-Metal hip replacement surgeries.   These lawsuits are in their early stages.   The firm filed many complaints in the Superior Court of the State of California, which are pending with the Judicial Council Coordinated Proceeding, and it will continue to pursue these cases on behalf of our clients and all affected individuals.

**Yaz/Yasmin/Ocella Litigation**

Yaz and Yasmin are oral contraceptives developed, designed, licensed, and manufactured by Bayer and/or Bayer subsidiaries. Ocella is the generic version of Yaz and Yasmin and is a registered trademark of Barr Laboratories, Inc. The ingredient that makes Yaz, Yasmin, and Ocella unique among commercially available birth control is Drosperinone; Drosperinone is a lab-made hormone intended to mimic the effects of naturally occurring hormone Progesterone. Drosperinone is chemically unlike the other lab-made hormones and its use in Yaz, Yasmin, and Ocella has been linked to serious safety concerns. Wexler Wallace currently represents hundreds of individuals who have suffered serious injuries after ingesting Yaz, Yasmin, or Ocella.

**SSRIs**

When taken during pregnancy, the group of antidepressant drugs classified as Selective Serotonin Re-uptake Inhibitors (SSRIs) has been linked to birth defects of the heart, lung, and other internal organs, as well as the conditions known as cleft-palate and club foot.  Studies show that infants who have been exposed to SSRIs, especially during the critically developmental first trimester of pregnancy, have a significantly higher risk of developing congenital birth-defects when compared to infants who were not exposed. SSRI antidepressants such as Zoloft, Effexor, Paxil, Wellbutrin, Lexapro, and Celexa have all been linked to these birth defects.  In many cases, corrective surgery is required just after birth, but it can take place at any time after birth.  SSRIs have also been linked to increased risk of atrial and ventricular septal defects, persistent pulmonary hypertension, and a range of serious cranio-facial, limb (hand, arm, foot, leg) and abdominal wall malformations.  The Food and Drug Administration issued its first Public Health Advisory warning about these risks in December of 2005.  Wexler Wallace

represents hundreds of claimants who have suffered or are suffering injuries related to SSRI ingestion.

**Transvaginal Mesh Litigation**

On October 20, 2008, the FDA issued a Public Health Notification to health care practitioners, alerting them to serious complications associated with the placement of transvaginal surgical mesh used to treat Pelvic Organ Prolapse and Stress Urinary Incontinence. Wexler Wallace represents a number of women who were injured by this surgical mesh, and is seeking to recover damages on their behalf.  In an April 17, 2012 order issued by Chief Judge Joseph R. Goodwin, Edward A. Wallace was appointed to the plaintiffs' steering committee for a number of cases related to the implantation of transvaginal surgical mesh.

**Securities and Business Litigation**

### *Boca Raton Firefighters and Police Pension Fund v. Devry Inc. et al.*, No. 10-cv-07031 (N.D. Ill.)

Wexler Wallace is appointed liaison counsel in this securities fraud lawsuit alleging that DeVry, a global provider of educational services for profit, issued a series of materially false and misleading statements regarding the company's business and financial results. Because of these statements, which occurred during the period between October 25, 2007 and August 13, 2010 (the "Class Period"), DeVry's common stock traded at artificially inflated prices.   The complaint specifically alleges that, as a result of numerous statements by the company about "record" financial results, the price of its common shares jumped substantially, from $40.03 on October 26, 2007 to as high as $74.25 on April 22, 2010.  The federal government, however, had been engaged in an undercover investigation of the for-profit education industry, of which DeVry was a part. On August 4, 2010, GAO issued a report in which it specifically cited abuses committed by DeVry.  DeVry's stock price then plummeted.  The complaint, which plaintiff recently amended, seeks damages for shareholders injured as a result of the artificial inflation of DeVry common stock.

### *Stender et al. v. Archstone-Smith Operating Trust et al.,* No. 07-CV-02503-WJM-MJW (D. Colo.)

Wexler Wallace filed a complaint on behalf of a class of real estate investment trust (REIT) investors against one of the largest REITs in the country, Archstone-Smith, Archstone-Smith Operating Trust (the UPREIT) and its trustees.  The complaint alleges breaches of contract, breaches of fiduciary duties, and violations of federal securities laws, among other things, resulting directly from of a merger through which entities owned and controlled by a partnership of Tishman Speyer Development Corporation and Lehman Brothers Holdings, Inc. acquired the Archstone-Smith entities. The plaintiff class consists of investors who originally owned properties (or who had invested in properties) which were ultimately contributed to Archstone-Smith.  In exchange for the contribution of the properties, the contributors acquired units that had a number of valuable characteristics, including, but not limited to, tax protection for a set number of years, the ability to exchange those units on the open market for the then trading price of Archstone-Smith common stock, and the right to receive dividends, consistent with Archstone-Smith's status as a REIT, for as long as such units were held.

The merger between the Tishman/Lehman entity and Archstone-Smith resulted in the elimination of the units Plaintiffs had acquired when they contributed their valuable properties.  The merger forced them to accept specified cash consideration or a newly created debt instrument in the surviving entity.  Neither option from which Plaintiffs were forced to choose continued the valuable characteristics that were the hallmarks of the units which Plaintiffs owned prior to the merger.  The currently operative complaint, which Plaintiffs were granted leave to file in April, 2011, includes fifteen counts, relating

to the destruction of the value of Plaintiffs investments. The claims in Colorado federal court are currently stayed while certain claims are resolved in arbitration. The arbitration is currently proceeding, after which the litigation will resume.

### *Virginia M. Damon Trust v. Mackinac Financial Corp., f/k/a North Country Financial Corp.*, No. 03-cv-0135 (W.D. Mich.)

Wexler Wallace was co-lead counsel on behalf of plaintiffs in this shareholder derivative lawsuit that alleged that the former chief executive officer of North Country Financial Corporation (n/k/a Mackinac Financial Corp.) breached his fiduciary duties to the bank and its shareholders by, among other things, mismanaging the bank's commercial loan portfolio, failing to heed repeated warnings from regulators regarding internal controls at the bank, and failing to correct specific deficiencies in the bank's underwriting, loan collection, and loan administration functions. The Virginia Damon Trust alleged that the Bank underwent years of gross mismanagement that ultimately resulted in cease and desist orders from the Federal Deposit Insurance Corporation and the Michigan Office of Financial and Insurance Services. The United States District Court for the Western District of Michigan granted final approval of a multi-million dollar settlement, payable to the bank, which, at the time, was in financial distress.

### *List v. List*, No. 96 CH 845 (Cir. Ct. Ill., Cook County)

After more than a decade of litigation, certain shareholders of List Industries retained Wexler Wallace to pursue this derivative suit, which involved alleged waste and mismanagement by an officer and director of the company. After key discovery and extensive settlement negotiations, this long-running dispute was successfully resolved for a confidential amount.

### *Angelfish Swim School, Inc., v. Glenda A. Hood, Secretary of State of the State of Florida*, No. 03-13413 CA 21 (11th Jud. Cir. Ct., Miami-Dade, FL)

This novel case seeks a declaratory judgment that two sections of Florida's Business Corporations Act (Fla. Stat. § 607.0122(13) and Fla. Stat. § 607.193(2)(b)) are unconstitutional. Angelfish Swim School and Steak on the Run, two small business plaintiffs in Florida, were tardy in filing their Annual Reports with the Florida Secretary of State and were assessed a statutory $400 "late charge" and a $600 statutory "reinstatement fee," respectively. Plaintiffs claim that both charges were excessive penalties in violation of the Florida Constitution.

Wexler Wallace was asked to become involved in the case in 2008, just before the hearing on class certification. Although the case was twice certified by the trial court, the Third Circuit Court of Appeal reversed, finding that plaintiffs needed to show that they were willing to "participate" in the costs of funding the litigation. As the issue raised a fundamental due process question of access to the courts, the Plaintiffs were

joined on appeal by several *amici* including the Florida Justice Association, Jacksonville Area Legal Aid, Inc., the Public Interest Law Section of the Florida Bar, Florida's Children First, Inc., and Public Justice, P.C.

The Third District Court of appeal issued a *per curiam* opinion reversing the second certification order, without explanation.   Because of the fundamental constitutional issues involved, counsel is now petitioning for rehearing, rehearing *en banc*, and to certify the following question of great public importance to the Florida Supreme Court:

> Whether class representatives, who are of limited economic means, entitled to rely on their counsel to advance the costs attendant to class action litigation pursuant to Rule 4-1.8 of the Rules Regulating the Florida Bar in order to be considered financially adequate representatives of the class.

### *The Village of Maywood, Illinois v. Unison-Maximus, Inc., Hill Taylor & Company, LLC and Sharon Gist Gilliam*, No. 00 L 014029 (Cir. Ct. Ill., Cook County)

Wexler Wallace filed this action on behalf of a municipality, seeking damages from a management consulting and accounting firm that was hired to run the Village's Finance Department but allegedly failed to fulfill its duties, including failing to keep a detailed general ledger of the Village's finances over a multi-year period.  The Village also sued its auditor for its alleged failure to notify the Village that the financial statements prepared by the management consulting and accounting firm were woefully unreliable. The parties ultimately entered into a settlement that resolved the litigation.

### *Wiginton v. CB Richard Ellis, Inc.*, No. 02-cv-6832 (N.D. Ill.)

Wexler Wallace served as co-lead counsel in this class action against CB Richard Ellis Group, Inc., alleging claims of sexual harassment on behalf of a class of current and former female employees.   After extensive litigation, Wexler Wallace secured a favorable settlement that made available monetary relief for eligible claimants, as well as a charitable contribution to the Commercial Real Estate Women (CREW) Network for the purpose of establishing scholarships to promote the entry or advancement of women in the real estate services industry.   The Court granted final approval of Plaintiffs' settlement with CBRE.

### *In re Balanaced Return Fun Limited et al. v. Royal Bank of Canada*, No. 600949/09 (N.Y. Sup. Ct.)

Wexler Wallace represents a hedge fund in this breach of fiduciary case against the Royal Bank of Canada ("RBC") and related Defendants (with RBC, the "RBC Defendants").   The suit seeks to recover investments in Olympus United Funds (the "Fund") lost during the period from 2000 through mid-2005 as a result of conduct by the

RBC Defendants that caused the collapse of the Fund. More specifically, the RBC Defendants disregarded the interests of the Plaintiffs and other investors in favor of their own interests by approving a transaction which depleted the Fund of assets while appropriating the benefits of those assets for themselves.

**Illinois Funeral Directors Litigation (multiple cases)**

Wexler Wallace has served as lead counsel and spearheaded litigation aimed at restoring funds to the Illinois Funeral Directors Association Preneed Trust (the "IFDA Trust"). The IFDA Trust was designed to be a safe, conservative investment vehicle for funds deposited by consumers who pre-paid for their funerals by purchasing preneed funeral contracts. Beginning in the fall of 2007, however, funeral directors at the plaintiff funeral homes learned that, contrary to what they had been told, the money they had deposited for their customers was not safe and that the Trust was running at a deficit. Wexler Wallace's investigation revealed that, not only were the Trust's assets shrinking, but the variable universal life insurance policies that defendants had recommended IFDA purchase with trust funds were completely inappropriate investments for the goals of the Trust's beneficiaries. After learning how their deposits were actually being invested, these funeral directors filed suit on January 28, 2009.

The first case filed (*Calvert Funeral Homes, et al. v. Ninker, et al.*) was a derivative action brought on behalf of the IFDA that sought to restore the IFDA Trust. A second case, *Clancy-Gernon Funeral Home, et al. v. Merrill Lynch, Pierce, Fenner & Smith, et al.*, was later filed against the IFDA's former legal and financial advisors, as a class action on behalf of Illinois funeral homes that had deposited funds in the IFDA Trust.

Over more than three years, Wexler Wallace expended countless hours litigating these cases, fending off motions to dismiss brought by over a dozen defendants, taking key depositions, reviewing over 1 million pages of discovery documents, analyzing over 17 million lines of data and working closely with experts in accounting, municipal bond investments, insurance and the pre-need funeral industry.

Wexler Wallace has additionally not hesitated to protect the interests of the class in related litigation. For example, when one of the defendants announced that it was entering into a settlement with a state agency that would require class members to release their legal claims in order to participate, Wexler Wallace brought an action for declaratory and injunctive relief, and won. The Court ruled that the agency did not have the authority to require members of the class to give up their claims in order to obtain what amounted to a partial recovery, and the money collected by the state was distributed to class members without this requirement.

The Court in the class action litigation recognized Wexler Wallace's hard work and dedication when it appointed the firm Lead Settlement Counsel for the Provider and Trustee Class. Working with counsel for a class of pre-need consumers, Wexler Wallace

was able to negotiate a $41,150,000 global settlement resolving the claims of over 600 funeral directors, 40,000 pre-need contract purchasers and beneficiaries, and dozens of trustees for pre-need funeral accounts associated with hundreds of millions of dollars once held in the IFDA Trust.

***Advanced Caregivers, LLC v. ACE Hardware Corporation***, **No. 12-cv-20082 (S.D. Fla.)**

Wexler Wallace and co-counsel filed this class action complaint against Ace Hardware Corporation on behalf of franchisees of ACE "Vision 21" stores, a new franchise model purportedly developed to compete with "big box" retailers.  The plaintiffs allege that ACE made material misrepresentations concerning the likely success of Vision 21 franchises in violation of the Illinois Franchise Disclosure Act.  The plaintiffs allege that ACE provided new and already existing ACE franchisees with materials and information that were patently misleading and induced them to invest in the new concept stores. Despite ACE's representations that over 90 percent of Vision 21 stores succeed, many Vision 21 franchises have never approached close to the level of success that ACE represented they would.  In many cases, failing from the outset, franchises had no choice but to close their stores shortly after opening.  Plaintiffs seek damages in the amount required to convert or open new Vision 21 stores, amounts which they would never have invested had ACE provided them with a true picture of the stores' likely success.

**ATTORNEY BIOGRAPHIES**

*Kenneth A. Wexler*
**Founder**

Kenneth A. Wexler, the founder of the firm, is a 1980 graduate of the Georgetown University Law Center.  He received a Bachelor of Arts degree in 1977, *summa cum laude*, from Washington University in St. Louis, Missouri.

For over 30 years, Ken has devoted himself to helping those whose rights have been denied, or who have been victims of the unscrupulous or fraudulent actions of others, typically more powerful persons or entities.  Founder of Wexler Wallace, Ken was also a founding partner of the firm formerly known as Miller Faucher Cafferty and Wexler LLP.  Before then, he began his career and was a partner in the Chicago law firm now known as Much Shelist Dennenberg Ament & Rubenstein, PC.

Ken has been in leadership positions in cases with far-ranging subject matters, including brand name manufacturer suppression of competition from generic drugs, fraudulent and deceptive product overcharges, discrimination and harassment, corporate waste and mismanagement, cost recovery for defective medical devices, false advertising, and government fraud.  Ken's practice is devoted to complex class action and commercial litigation, which includes a substantial amount of health care litigation, claims brought under federal and various state false claims statutes, and cases alleging violations of the securities and antitrust laws.  At present, Ken is particularly focused on protecting issuers of municipal bonds, recovering losses for pension funds and other investors that were victimized by unlawful and improvident securities lending practices, and cost-recovery for victims of health care fraud, including Taft-Hartley Funds, self-insured employers and governments.

Ken is a member of the Chicago Bar Association, Illinois State Bar Association, Federal Bar Association, American Bar Association, Chicago Council of Lawyers, American Association for Justice (AAJ) and the Illinois Trial Lawyers Association.  He is admitted to the bar in Illinois and is licensed to practice before the Illinois Supreme Court, United States District Court for the Northern and Southern Districts of Illinois, the United States Court of Appeals for the First, Second, Third, Sixth and Seventh Circuits and the United States Court of Appeals for the District of Columbia.  With so many of the firm's cases pending in jurisdictions across the country, Ken has also been admitted to practice *pro hac vice* in United States District Courts of New York, Maine, Massachusetts, Pennsylvania, New Jersey, Virginia, the District of Columbia, Missouri, Tennessee, Florida, New Mexico, Minnesota, Maryland, South Dakota, Connecticut, Ohio, California and Wisconsin.

Along with bar activities, Ken is a fellow of The Roscoe Pound Institute, a member of the American Constitution Society for Law and Policy, a member of the Center for

International Legal Studies and the National Association of State Treasurers.  He is on the Board of the Anti-Defamation League and is a member of the Executive Committee of the Civil Rights committee.  Ken is also on the Board, as well as Vice President and Treasurer, of Beyond OCD, an organization devoted to providing education and resources to those affected by this illness.

### Edward A. Wallace
### Partner

Edward A. Wallace is a 1995 graduate of DePaul University College of Law.  He received a Bachelor of Arts degree in 1991 from Eastern Illinois University.

Ed joined the firm in February 2000, a little over a month after its founding.  Since then, he has helped lead the firm to national prominence.  He became a partner of the firm in 2003 and joined Ken Wexler as an equity partner in 2006.  Ed focuses his practice on large scale multi-party complex litigation and he has been asked to serve in leadership positions in numerous high-profile cases, including recent appointments in securities litigation and mass torts.

Ed's hard work led to his recognition as a 2009 "Rising Star" by Super Lawyers for the practice areas of class actions and mass torts, an award given annually to no more than 2.5 percent (2.5%) of the lawyers in Illinois.  Ed also was rated by peers in the Bar and given an AV® Preeminent™ rating by Martindale-Hubbell,[3] the highest rating a lawyer can obtain, indicating a very high to preeminent legal ability and exceptional ethical standards.

He is admitted to the bar in Illinois and is licensed to practice before the Illinois Supreme Court, the United States District Court for the Northern and Southern Districts of Illinois, the United States District Court for the Western District of Michigan, the United States District Court for the District of Colorado, the United States Court of Appeal for the Third and Seventh Circuits and has been admitted pro hac vice in many courts around the country.

Ed is a member of the American Bar Association and is a former Consumer Protection Law Subcommittee Newsletter Co-Chair, a member of the Chicago Bar Association, where he is a member of the Class Action Committee, a member of the Illinois State Bar Association, a member of the National Association of Shareholder and Consumer Attorneys, a member of Public Justice as well as a member of the American Association for Justice (AAJ).  Within AAJ, he belongs to the Commercial Law Section, the Product

---

[3] Martindale-Hubbell is the facilitator of a peer review rating process. Ratings reflect the confidential opinions of members of the Bar and the Judiciary. Martindale-Hubbell Ratings fall into two categories - legal ability and general ethical standards. CV, BV and AV are registered certification marks of Reed Elsevier Properties Inc., used in accordance with the Martindale-Hubbell certification procedures, standards and policies.

Liability Section and the Section on Toxic, Environmental and Pharmaceutical Torts (STEP).  At the AAJ's recent annual convention, Ed was re-elected co-chair for the Kugel Mesh Litigation Group.


### Amber M. Nesbitt
### Associate

Amber M. Nesbitt is a 2000 graduate of the University of Michigan, with a Bachelor of Arts in psychology and sociology.  She received her J.D., *magna cum laude*, from Loyola University Chicago School of Law in 2004.  At Loyola, she was a member of the Loyola University Law Journal and the Publication Editor of the Public Interest Law Reporter.

Amber began at Wexler Wallace as a summer associate while in law school, and joined the firm as an attorney upon graduating in 2004.  In that time, she has been actively involved in several types of cases, from complex class action litigation involving nationwide claims to arbitration of business disputes and everything in between.  A majority of her time is spent on antitrust, consumer fraud, and RICO cases, although she also has extensive experience with civil rights, securities, mass torts and shareholder derivative lawsuits.  She is regularly involved in all aspects of litigation, from investigating potential cases, conducting and managing discovery, researching legal issues and drafting briefs at every stage of a lawsuit, preparing for trial, and mediating and negotiating settlements.  Amber has first-chaired the arbitration of a partnership dispute directed to a complex business relationship and real estate transaction.


### Amy E. Keller
### Associate

Amy E. Keller is a 2005 graduate of the University of Michigan, with a Bachelor of Arts in Political Science, and a minor in French and Francophone Studies.  She received her Juris Doctor from The John Marshall Law School in 2008.

As an undergraduate, Amy worked as a summer intern for the Honorable Denise Page Hood of the United States District Court for the Eastern District of Michigan.  In 2004, she received national recognition for leadership while president of the governing body for Michigan's sixteen residence halls from the Great Lakes Affiliate of College and University Residence Halls.

During law school, Amy earned a CALI Award in both Real Estate Transactions and Criminal Procedure.  She was member of the Moot Court Council and *The John Marshall Law Review*, and served as the Parliamentarian for John Marshall's chapter of the Lambda Alpha International Student Association. In her third year, as the Administrative

Editor of the law review, Amy was selected to chair a state-wide symposium highlighting the revisions to the Illinois Criminal Code. *The Criminal Law Edit, Alignment and Reform Initiative: A Symposium on the New Criminal Code*, 41 J. Marshall L. Rev. 610-935 (Spring 2008).

Amy has specialized in complex class action litigation since beginning her practice of law in 2008.   Amy has a particular fondness for consumer protection and, in addition, works on numerous business and antitrust matters for the firm.

Amy has been asked to master a variety of tasks in the practice of law.  She has assisted in seeking summary judgment on behalf of a class of Plaintiffs against a major insurance company, made several material discovery finds in significant antitrust litigation, and briefed numerous matters pending in federal courts in multiple jurisdictions.

### Bethany R. Turke
### Associate

Bethany joined Wexler Wallace after practicing in the New York and Chicago offices of Latham & Watkins LLP.  Bethany's practice at Latham involved a wide range of civil and criminal litigation matters, including securities litigation, contract disputes, government investigations, and employment matters.  She was also very active in Latham's pro bono practice, working tirelessly on behalf of clients facing various immigration, employment, and housing discrimination issues.  Before joining Latham & Watkins, Bethany served as a law clerk to the Honorable Cheryl L. Pollak of the United States District Court for the Eastern District of New York.  She received her J.D. from Harvard Law School in 2006.

Bethany is actively involved on cases in a number of Wexler Wallace's practice specialties, including the firm's antitrust, healthcare, and consumer protection practice areas.

### Corey G. Raines
### Associate

Corey's primary practice area at Wexler Wallace LLP is mass tort litigation.  While in law school she actively engaged in the study of civil litigation and trial advocacy, where she was a member of the Moot Court Society and was a semi-finalist in the Intramural Moot Court Competition. She has applied these skills to her practice of law with Wexler Wallace where she works with clients that have been injured by the use of Actos, Pelvic Mesh and Yaz. Corey graduated from the DePaul University College of Law in 2011.

### Dawn M. Goulet
**Associate**

Dawn M. Goulet is a 2009 graduate, *magna cum laude*, of the Loyola University Chicago School of Law, where she was the recipient of an Honors at Entrance Academic Scholarship.  Dawn received her Bachelor of Science in Architecture, *cum laude*, from Lawrence Technological University, Southfield, MI in 2002.  First as a paralegal and now as an attorney, Dawn has been actively involved in many of the firm's most complex cases, including its extensive healthcare litigation practice.  Dawn is often the point person for client contact and has an excellent grasp of all phases of litigation, from case initiation through discovery and ultimate resolution.

Dawn began her legal career as a member of the firm's support staff nearly ten years ago.  As a paralegal, she developed a passion for complex litigation that led her to law school, where she immersed herself in a curriculum of consumer protection, antitrust, class action litigation, products liability and pharmaceutical regulation, received CALI awards for obtaining the highest grade in a number of her classes, and graduated at the top of her class.   Dawn's familiarity with complex litigation now serves her well as an associate.

At Loyola, Dawn was the recipient of academic honors and demonstrated leadership as as the Consumer News Editor and an executive board member for the Consumer Law Review.  Because of the interest and experience she developed at Wexler Wallace, Dawn was also selected, as a first year law student, to join the Institute for Consumer Antitrust Studies' student fellowship, which is limited to students with demonstrated interest or experience in antitrust and consumer protection, and who maintain grades at the top of their class.  As a student fellow, Dawn attended high profile events attracting renowned scholars and practitioners in the field of antitrust.  As a third year student at Loyola, Dawn was also one of six law students from Chicago-area law schools featured in the September, 2008 issue of Chicago Lawyer magazine.

Now in her fourth year of practicing law, Dawn works tirelessly to improve her skills to better serve the firm's clients.  She is an active member of the Chicago Bar Association, Illinois Bar Association, American Association for Justice, Illinois Trial Lawyers Association and American Bar Association, including its Class Action and Derivative Suit Committee, for which she serves as a consumer law sub-committee co-chair.

### Justin N. Boley
**Associate**

After attending school abroad and obtaining a Masters Degree in International Relations, Justin sought out a career in law that led him to Wexler Wallace. He attended law school after earning a merit scholarship, and then began work at the firm as a summer associate and clerk during the school year.

During law school, Justin's focus on corporate law, finance, and complex litigation earned him numerous academic honors; he was awarded top-of-the-class CALI Awards in Antitrust, Contracts, Legal Analysis, Research, and Writing III, Commercial Arbitration, Natural Resource Law, and Legal Profession (Ethics). Justin was a member of the Public Interest Law Committee at DePaul College of Law for three years. He also worked as a member of the New Media Team in President Obama's Presidential campaign headquarters in Chicago, where he helped facilitate the online organizing efforts of grassroots groups nationwide.

Since joining the firm, he has been actively involved in litigation covering a wide range of practice specialties, including antitrust class actions, a matter involving complex multistate breaches of contract and fiduciary duty, and an international multidistrict product liability case. Justin is admitted to the bar of the State of Illinois, Western District of Wisconsin, United State Court of Appeals, Seventh Circuit, and the United States District Court for the Northern District of Illinois.

### Kara A. Elgersma
**Of Counsel**

Kara A. Elgersma is a 2000 graduate of Georgetown University Law Center, with Bachelor of Arts Degrees in English and History, obtained from the University of Kansas in 1997.

Kara came to Wexler Wallace from K&L Gates LLP, where she was a partner. At K&L Gates, Kara was a member of the Antitrust and Trade Regulation Department, focusing on antitrust litigation, franchising and dealership disputes, class actions and other complex commercial litigation, as well as advising clients on a variety of regulatory matters, including antitrust, FCC and energy regulatory policies.

Kara's experience includes all aspects of complex commercial litigation. In addition, she is well-versed in arbitration, including pre-hearing case development and management, as well as the conduct of full hearings.

For six months in 2004, Kara was "on loan" to Kraft Foods Global, Inc., Northfield, Illinois, where she directly assisted the Chief Litigation Counsel for the company, and handled a wide variety of litigation matters, including small and large product liability claims, general commercial litigation, civil investigative demands from the Federal Trade Commission, business subpoenas, labor and employment litigation and bankruptcy matters.

She is admitted to the Bars of the Supreme Court of Illinois, The District of Columbia Court of Appeals, The Supreme Court of Wisconsin, The United States District Courts for the Northern District of Illinois and the District of Columbia, the District Court of Colorado, the United States Courts of Appeals for the Third, Fourth, Sixth, Seventh, and Tenth Circuits, and the Supreme Court of the United States.

Kara is a member of the American Bar Association, the Illinois State Bar Association, and the District of Columbia Bar Association.  She was a Board Member of the Competition Law360 Advisory Board for 2009 to 2010, and has been involved as a Board Member for Girls on The Run in Northern Virginia, as well as a volunteer with Chicago Volunteer Legal Services from 2000-2006.

### Mark R. Miller
### Associate

Mark R. Miller is a 2001 graduate of Central Michigan University, with a Bachelor of Science in History.  He received his J.D. from Loyola University Chicago School of Law in 2004.

Before joining Wexler Wallace, Mark represented both plaintiffs and defendants at all stages of litigation and in various areas of the law.  He has first-chaired a bench trial and successfully argued a motion for class certification in a multimillion dollar case.

At Wexler Wallace, Mark has been engaged in virtually all facets of complex litigation on the plaintiffs' side.  He has enhanced the firm's reputation and developed solid relationships with judges, co-counsel and clients alike.

Mark's charitable work has demonstrated his commitment to protecting the right of all persons, regardless of social or economic background, to obtain able representation.  His work with local businesses has given him an understanding of the importance of the legal system's role in protecting the interests of small business and consumer clients from trade violations and other abuses of market power.

While at Loyola, Mark obtained a Trial Advocacy Certificate, received awards for his work with local small businesses, was chosen by faculty members to participate in Loyola's London Comparative Advocacy Program and provided pro bono legal services

to the indigent through the Cabrini Green Legal Aid clinic.  From 2007 to 2010, he also coached Loyola's Chicago Bar Association Moot Court Team.  Mark is admitted to the bar of the State of Illinois and the United States District Court for the Northern District of Illinois.

### Michael H. Bowman
### Associate

Michael H. Bowman received his J.D. from Rutgers University in May of 2004. In law school, Mike was immersed in complex financial cases as a creditor's rights law clerk. After graduation, he began his career by working to defend litigation brought against the federal government. His commitment to holding wrongdoers accountable through the judicial system brought him to Wexler Wallace in 2006.

At Wexler Wallace, Mike has been involved in many of the firm's diverse practice areas. From antitrust class actions to mass torts, Mike has sought results for individuals and businesses who would otherwise be denied relief. Mike's devotion to achieving results that create widespread positive change exemplifies what Wexler Wallace is all about.

### Thomas A. Doyle
### Of Counsel

Thomas A. Doyle came to Wexler Wallace in the spring of 2012. Prior to joining Wexler Wallace, Tom was a principal of Thomas A. Doyle Ltd., where he focused his practice on antitrust and employment litigation. He has litigated class and other complex litigation in state and federal courts throughout the United States, recovering millions of dollars for his clients.

Tom has been able to pursue claims efficiently and effectively, helping large groups of people recover for injuries that they have suffered from unlawful conduct by others. His appointed positions and representative matters include *In re TFT-LCD (Flat Panel) Antitrust Litigation*, *In re TransUnion Corp. Privacy Litigation*, and *Gomez v. PNC Bank.*

As a result of his work, he is often asked to lecture and write articles on topics relating to class litigation as well as alternative dispute resolution. Tom has been a lecturer, moderator and panelist at several conferences including the Annual Meetings of the ABA's Committee on Alternative Dispute Resolution, The University of Louisville's 29th Annual Labor & Employment Law Institute, and the ABA Section of Labor & Employment Law's National CLE Conferences.

He is admitted to the bars of the Supreme Court of Illinois, the Trial Bar of the United States District Courts for the Northern District of Illinois, the United States Court of Appeals for the Seventh Circuit, and the Supreme Court of the United States.

Tom is a member of the American Bar Association and co-chair of the Committee on Alternative Dispute Resolution, Section of Labor & Employment. He is also a member of the Chicago Bar Association and the Illinois State Bar Association. He recently served as a Director of the Chicago Bar Foundation, and he is an active member of the CBF's *Cy Pres* Committee.

He is a 1990 graduate of the University of Illinois College of Law, with a Bachelor of Science Degree obtained from Bradley University. In 1999 he was awarded Best Oral Advocate at the F.H. Green National Moot Court Competition held at the University of Illinois College of Law.

### *Debbie A. Pritts*
### Legal Nurse Consultant

Debbie A. Pritts, R.N., LNCC is a Registered Nurse with over 20 years of clinical experience in Oncology, Med-Surg, Endoscopy, Ambulatory/Outpatient Care, Orthopedics, Ophthalmic Laser, Home Health and Utilization Review.  She has been certified in BLS (Basic Life Support), ACLS (Advanced Cardiac Life Support) and Chemotherapy Administration. Debbie achieved the status as Legal Nurse Consultant Certified (LNCC) through the American Association of Legal Nurse Consultants (AALNC) in November 2005.  LNCC certification is designated after successfully meeting the requirements through examination and experience that validate qualifications, knowledge and practice in the field of legal nurse consulting.  LNCC is the only legal nurse consulting credential recognized by American Association of Legal Nurse Consultants and accredited by the American Board of Nursing Specialties (ABNS).

Debbie has experience in Product Liability, Medical Malpractice, Personal Injury and Workers Compensation. Debbie is a member of the American Association of Legal Nurse Consultants and the West Virginia Upper Ohio Valley Chapter of the AALNC, presently serving as the chapter's president.   She has been a Member of the Board of Directors since 2005, serving as a past Treasurer and is Chair of the Website Committee. Additionally she is a founding member of the WV Bar Association, Legal Nurse Consultant Section.

She works directly with clients of Wexler Wallace, from the first time they contact the firm, through trial.  Her expertise and passion for the job has provided the firm's clients with the service they deserve.

EXHIBIT 2

# WELLBUTRIN XL

**FIRM NAME:** Wexler Wallace LLP
**REPORTING PERIOD:** Inception - April 2013

**Categories:**

(1) Investigation and Research
(2) Discovery
(3) Pleadings, Briefs, and Pretrial Motions
(4) Court Appearances/Trial
(5) Settlement Negotiations, Stipulation of Settlement
(6) Litigation Strategy and Analysis
(7) Class Certification
(8) - (11) as necessary-please include detail

**Titles:**

(P) Partner
(A) Attorney
(LC) Law Clerk
(C) Counsel
(PL) Paralegal

| Name (Title) | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | (11) | CURRENT RATE | CUMULATIVE HOURS | CUMULATIVE LODESTAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Kenneth A. Wexler (P) | 6 | 302.2 | 141.2 | 28.3 | 23.1 | 153.4 | 142.3 | | | | | $ 675.00 | 796.50 | $537,637.50 |
| Edward Wallace (P) | | | | 2.9 | | | | | | | | $ 575.00 | 2.90 | $1,667.50 |
| Amber M. Nesbitt (A) | 9.90 | 1346.90 | 1052.00 | 283.30 | 123.80 | 1144.70 | | | | | | $ 450.00 | 3,959.80 | $1,781,910.00 |
| Amy E. Keller (A) | | | | | | 0.70 | | | | | | $ 350.00 | 0.70 | $245.00 |
| Chad E. Bell (A) | | | | | | 12.80 | | | | | | $ 300.00 | 12.80 | $3,840.00 |
| Dawn Goulet (A) | 0.40 | 2.10 | 72.00 | 19.80 | | 2.80 | | | | | | $ 375.00 | 97.10 | $36,412.50 |
| Don Barrett (A) | | 9.10 | | | | | | | | | | $ 400.00 | 9.10 | $3,640.00 |
| Ian J. Barlow (A) | | 21.10 | 37.60 | | | 1.30 | 2.50 | | | | | $ 300.00 | 62.50 | $18,750.00 |
| Jennifer Connolly (A) | | 323.90 | 219.70 | 77.10 | 16.20 | 77.70 | 135.60 | | | | | $ 495.00 | 850.20 | $420,849.00 |
| Justin Boley (A) | 11.10 | 715.80 | 1075.50 | 73.20 | | 87.10 | | | | | | $ 375.00 | 1,962.70 | $736,012.50 |
| Kara Elgersma (A) | 0.60 | | | | | 7.80 | | | | | | $ 450.00 | 8.40 | $3,780.00 |
| Marisa Planells (A) | 15.00 | | 2.30 | | | | | | | | | $ 200.00 | 17.30 | $3,460.00 |
| Mark R. Miller (A) | | | 24.40 | | | | | | | | | $ 450.00 | 24.40 | $19,980.00 |
| Mark Tamblyn (A) | | | | | | 4.90 | | | | | | $ 525.00 | 4.90 | $2,572.50 |
| Michele Casey (A) | 0.50 | 336.20 | 103.40 | 0.50 | | 8.40 | 80.10 | | | | | $ 290.00 | 529.10 | $153,439.00 |
| Patrick Folcari (A) | 60.00 | 268.00 | | | | | | | | | | $ 300.00 | 328.00 | $98,400.00 |
| Rebecca Matthews (A) | 8.60 | 239.00 | | | | | | | | | | $ 300.00 | 247.60 | $74,280.00 |
| Tim Jackson (A) | | 540.50 | | | | | | | | | | $ 300.00 | 540.50 | $162,150.00 |
| Tighiani Mack (A) | | 1991.70 | | | | | | | | | | $ 300.00 | 1,991.70 | $597,510.00 |
| Tom Doyle (A) | | 24.70 | 0.20 | | 60.20 | 45.70 | | | | | | $ 530.00 | 130.80 | $69,324.00 |
| **Attorney Totals:** | 112.10 | 6,113.80 | 2,735.10 | 482.20 | 226.00 | 1,539.50 | 368.30 | 0.00 | 0.00 | 0.00 | 0.00 | | 11,577.00 | $4,179,222.00 |
| Amy Sayre (PL) | 61.60 | 906.40 | 28.00 | 5.20 | 3.80 | 49.80 | 26.60 | | | | | $ 150.00 | 1,081.40 | $162,210.00 |
| Bethany Teska (LC) | | 2.50 | | | | | | | | | | $ 150.00 | 2.50 | $375.00 |
| Elsa D. Buss (LC) | 4.00 | | 2.10 | | | | | | | | | $ 150.00 | 6.10 | $915.00 |
| Emily Moore | 17.05 | 0.50 | 14.80 | 9.95 | | | | | | | | $ 150.00 | 42.30 | $6,345.00 |
| Harry Epstein | | 30.10 | 13.50 | | | | | | | | | $ 150.00 | 43.60 | $6,540.00 |
| Jordan Van Dyk | 16.00 | 62.90 | 1.60 | | | 102.00 | 46.50 | | | | | $ 150.00 | 229.00 | $34,350.00 |
| Jamie L. Crofts | | 1.10 | 21.10 | | | | | | | | | $ 150.00 | 22.20 | $3,330.00 |
| Kelli G. Cole | 6.50 | 26.60 | | | | | | | | | | $ 150.00 | 33.10 | $4,965.00 |
| Katie Edwards | | 27.10 | | | | 5.30 | | | | | | $ 150.00 | 32.40 | $4,860.00 |
| Kathryn M. Doherty | 1.20 | | | | | | | | | | | $ 150.00 | 1.20 | $180.00 |
| Sara Rodriguez (PL) | | 57.00 | | | | | | | | | | $ 150.00 | 57.00 | $8,550.00 |
| **Non-Attorney Totals:** | 108.85 | 1,112.70 | 80.10 | 15.15 | 3.80 | 157.10 | 73.10 | 0.00 | 0.00 | 0.00 | 0.00 | | 1,550.80 | $232,620.00 |
| **TOTALS:** | 220.95 | 7226.50 | 2815.20 | 497.35 | 229.80 | 1696.60 | 441.40 | 0.00 | 0.00 | 0.00 | 0.00 | | 13,127.80 | $4,411,842.00 |

EXHIBIT 3

**FIRM NAME:  Wexler Wallce LLP**

**REPORTING PERIOD:  INCEPTION - APRIL 2013**

# <u>WELLBUTRIN XL</u>

| Description | | Cumulative Total |
|---|---|---|
| Assessments | $ | 308,761.47 |
| Commercial Copies | $ | 1,447.20 |
| Internal Reproduction/Copies | $ | 3,853.13 |
| Court Fees (filing, etc.) | $ | 120.00 |
| Court Reporters/Transcripts | $ | 8,400.31 |
| Computer Research | $ | 7,030.33 |
| Telephone/Fax/Email | $ | 1,678.44 |
| Postage/Express Delivery/Messenger | $ | 7,759.60 |
| Professional Fees (expert, investigator, accountant, etc.) | $ | 2,295.60 |
| Witness/Service Fees | $ | 160.00 |
| Travel: Air Transportation, Ground Travel, Meals, Lodging, etc. | $ | 58,034.68 |
| Miscellaneous: | $ | 29.25 |
| | | |
| | | |
| | | |
| | | |
| TOTAL EXPENSES | | $399,570.01 |

EXHIBIT 4

| | Lodestar | % | Lit Fund Contribution | % | Expenses paid by Firm | Total | % |
|---|---|---|---|---|---|---|---|
| WexlerWallace LLP | 4,411,842.00 | 29.64% | 308,761.47 | 29.75% | 90,808.54 | 399,570.01 | 31.23% |
| WDK | 1,002,162.50 | 6.73% | 30,000.00 | 2.89% | 4,947.69 | 34,947.69 | 2.84% |
| Branstetter | 3,787,842.50 | 25.45% | 324,520.00 | 31.27% | 50,149.21 | 374,669.21 | 28.87% |
| SMBB | 222,545.50 | 1.50% | 5,000.00 | 0.48% | 3,421.49 | 8,421.49 | 0.69% |
| Faruqi | 189,958.50 | 1.28% | 15,000.00 | 1.45% | 2,314.45 | 17,314.45 | 1.22% |
| Boni & Zack LLC | 12,375.00 | 0.08% | - | 0.00% | 782.81 | 782.81 | 0.06% |
| David J. Cohen, Esq | 9,900.00 | 0.07% | - | 0.00% | - | - | 0.00% |
| Kolman Ely, P.C. | 20,100.00 | 0.14% | - | 0.00% | - | - | 0.00% |
| Miller Law | 569,199.50 | 3.82% | 15,000.00 | 1.45% | 5,414.63 | 20,414.63 | 1.66% |
| Gustafsen Gluek | 79,695.00 | 0.54% | 5,000.00 | 0.48% | 4,177.28 | 9,177.28 | 0.75% |
| Scott and Scott | 1,485,198.50 | 0.10 | 15,000.00 | 1.45% | 8,898.81 | 23,898.81 | 1.22% |
| The Gardner Firm | 39,017.50 | 0.26% | 5,000.00 | 0.48% | 107.48 | 5,107.48 | 0.41% |
| Quinn, Conner, Weaver, Davies & Rouco LLP | 72,375.00 | 0.49% | 10,000.00 | 0.96% | 0.40 | 10,000.40 | 0.81% |
| Lowey Dannenberg Cohen and Hart *** | 2,981,404.00 | 20.03% | 304,500.00 | 29.34% | 70,710.60 | 375,210.60 | 30.32% |
| | 14,883,615.50 | 100.00% | 1,037,781.47 | 100.00% | 241,733.39 | 1,279,514.86 | 100.00% |