# EXHIBIT 4

# Ballard Spahr LLP

1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
TEL 215.665.8500
FAX 215.864.8999
www.ballardspahr.com

Leslie E. John
Tel: 215.864.8212
Fax: 215.864.8999
john@ballardspahr.com

November 10, 2014

*By Electronic Filing*
*By Facsimile*
*By Hand Delivery*

Honorable Mary A. McLaughlin
U.S. District Court for the Eastern District of Pennsylvania
Room 13614 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

Re:   In re Wellbutrin XL Antitrust Litigation, No. 08-cv-2433 (Indirect Purchaser Actions)

Dear Judge McLaughlin:

Pursuant to the Court's Order (ECF No. 513), we respectfully submit GSK's proposed schedule for discovery and briefing relating to GSK's Motion to Decertify the Indirect Purchaser Class, which is attached as Exhibit 1 to this letter. Despite extensive conferences, the parties are unable to agree on a schedule and the scope of discovery.

One major difference involves the length of the schedule. At the recent conference convened by the Court, the parties discussed a schedule under which plaintiffs would file an opposition to GSK's Motion to Decertify by March 1, 2015, but plaintiffs are now proposing a schedule that gives them until May 29, 2015—an additional three months. The second difference involves the plaintiffs' desire to seek discovery of GSK, despite their statements at the conference that they were only seeking discovery from a handful of pharmacy benefit managers ("PBMs"), possibly a retail pharmacy, and a single deposition of GSK's expert. GSK has already produced more than 3 million pages of documents and data to plaintiffs, including sales and rebate data and utilization data for Wellbutrin XL by TPPs. Plaintiffs have also deposed over 20 GSK witnesses, including GSK pursuant to Rule 30(b)(6). As discussed during the Court's conference, the facts relevant to the ascertainability inquiry, *i.e.*, identifying which PBMs or TPPs bore the financial risk of the alleged overcharges pursuant to the private risk-sharing arrangements among them, would be found in the data and documents belonging to plaintiffs, not GSK. GSK is not a party to the contractual arrangements among PBMs and TPPs. GSK informed plaintiffs of its concerns by letter dated October 23, 2014, a copy of which is attached hereto as Exhibit 2.

In the spirit of compromise, however, GSK has agreed to produce all non-archived data relating to Wellbutrin XL that GSK received from PBMs and TPPs in the ordinary course of business pursuant

DMEAST #20300195 v2

Atlanta | Baltimore | Bethesda | Denver | Las Vegas | Los Angeles | New Jersey | New York | Philadelphia | Phoenix | Salt Lake City |
San Diego | Washington, DC | Wilmington | www.ballardspahr.com

Honorable Mary A. McLaughlin
November 10, 2014
Page 2

to rebate contracts. Plaintiffs accepted GSK's proposal, and GSK anticipates producing such data to plaintiffs by the beginning of December 2014. In lieu of a Rule 30(b)(6) deposition, GSK has also offered to provide written answers to plaintiffs' questions about that data.

In light of the goal agreed to by all to keep the case on schedule, GSK requests that Your Honor convene an in-person or telephonic conference to resolve the dispute. We are available for such a conference whenever it fits Your Honor's schedule.

Thank you for your continuing courtesy and cooperation.

Respectfully,

Leslie E. John

cc:     All co-lead counsel for Indirect Purchaser Plaintiff Class (via email)

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re WELLBUTRIN XL ANTITRUST LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br>ALL INDIRECT PURCHASER ACTIONS | Case No. 2:08-cv-2433<br><br><br><br><br>**Hon. Mary A. McLaughlin** |

**[PROPOSED] SCHEDULING ORDER**

The Court hereby enters a schedule for fact discovery, expert discovery, and briefing relating to Defendants SmithKline Beecham Corporation d/b/a GlaxoSmithKline and GlaxoSmithKline plc's ("GSK") Motion to Decertify the Indirect Purchaser Plaintiff Class ("GSK's Motion") as follows:

**Additional Discovery**

1. The parties may serve party and third-party discovery forthwith.

2. Unless otherwise agreed or by order of Court, fact discovery relating solely to ascertainability of the indirect purchaser class members shall close on December 31, 2014. Subject to objections, all documents and testimony, if any, from parties and third parties will be produced and taken on or before December 24, 2014.

3. Deposition of GSK's expert witness, Dr. Bruce Strombom, Ph.D., shall be taken before December 31, 2014.

4. Plaintiffs may serve expert reports regarding ascertainability of the indirect purchaser class on or before January 23, 2015.

      5.      Depositions of Plaintiffs' expert(s) shall be taken on or before February 13, 2015.

      6.      GSK may serve rebuttal expert reports on or before February 25, 2015.

**Briefing**

      7.      All *Daubert* motions relating to the parties' experts shall be filed on or before March 16, 2015.

      8.      Plaintiffs' Response in Opposition to GSK's Motion shall be filed on or before March 16, 2015.

      9.      All responses to *Daubert* motions shall be filed on or before April 13, 2015.

      10.     GSK's Reply Memorandum of Law in Further Support of GSK's Motion shall be filed on or before April 13, 2015.

      11.     Any hearing on the parties' *Daubert* motions, if necessary, shall be held on _____, 2015.

      12.     A hearing on GSK's Motion shall be held on _____, 2015.

Dated: _____

                                                           **SO ORDERED**

                                                            _____

                                                             **Mary A. McLaughlin, J.**

# EXHIBIT 2

# Ballard Spahr LLP

1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
TEL 215.665.8500
FAX 215.864.8999
www.ballardspahr.com

Leslie E. John
Tel: 215.864.8212
Fax: 215.864.8999
john@ballardspahr.com

October 23, 2014

*Via E-mail*

Kenneth Wexler
WEXLER WALLACE LLP
55 West Monroe Street
Suite 3300
Chicago, IL 60603
kaw@wexlerwallace.com

Peter St. Phillip, Jr.
LOWEY DANNENBERG COHEN
& HART, P.C.
One North Broadway
White Plains, NY 10601
PStPhillip@lowey.com

Joe P. Leniski, Jr.
BRANSTETTER STRANCH
& JENNINGS PLLC
227 Second Avenue North- 4th Floor
Nashville, TN 37201
jleniski@branstetterlaw.com

Re: <u>Wellbutrin XL Antitrust Litigation, Case No. 08-2433 (E.D. Pa.)</u>

Dear Counsel:

We write on behalf of Defendants SmithKline Beecham Corporation d/b/a GlaxoSmithKline and GlaxoSmithKline plc ("GSK") regarding: (1) plaintiffs' request for production of documents to GSK; (2) plaintiffs' Rule 30(b)(6) notice of deposition to GSK; and (3) plaintiffs' counterproposal to the proposed discovery schedule relating to GSK's Motion to Decertify. As we detail below, despite questioning by the Court at the October 17, 2014 conference, plaintiffs did not disclose any discovery that it intended to take of GSK and the discovery is objectionable on numerous grounds. Moreover, the schedule that you propose is inconsistent with the schedule all the parties discussed with the Court at the conference. Accordingly, we seek an immediate meet and confer concerning the proposed schedule and the discovery plaintiffs have served on GSK.

## Discovery Requests

We are surprised by plaintiffs' service of additional document requests and a deposition notice on GSK. During the October 17, 2014 conference, the Court inquired several times about the discovery plaintiffs intended to seek. You responded only that plaintiffs needed discovery from a handful of pharmacy benefit managers ("PBMs"), a deposition of GSK's expert Dr. Bruce Strombom, and potentially data from retail pharmacies. At no point did you mention to the Court that plaintiffs intended to seek additional discovery from GSK.

DMEAST #20156746 v2

Kenneth Wexler
Peter St. Phillip, Jr.
Joe P. Leniski, Jr.
October 23, 2014
Page 2

Further, GSK is unlikely to possess any additional responsive information due to the nature of the ascertainability inquiry. Plaintiffs stated to the Court that plaintiffs could prove, by the preponderance of the evidence, that no risk-bearing occurs in the PBM industry and that other TPPs bore the financial risk of the alleged overcharges. Evidence of risk-bearing in the PBM industry and the extent to which TPPs or PBMs bore financial risk would be found in data and contracts among TPPs and PBMs, which are members of your class as currently certified. GSK, as a pharmaceutical manufacturer, does not have specific knowledge regarding the financial risks that inhere downstream in TPP-PBM commercial relationships to which GSK is not privy. Accordingly, relevant information relating to documents such as "PBM contracts with TPPs" and testimony regarding "the use of Capitation Contracts by PBMs," is likely to exist only in the possession of plaintiffs and nonparties. In short, the source of information about contracts between PBMs and TPPs (*see* RFP No. 10, Dep. Topic 2), and PBMs' capitation practices (*see* Dep. Topic No. 1) are the PBMs and TPPs themselves—not GSK.

Plaintiffs' new round of document requests are also duplicative of plaintiffs' prior requests— to which GSK responded by producing over 3.1 million pages of documents and extensive data. For example, plaintiffs' newest requests demand documents relating to the marketing of Wellbutrin XL, GSK's rebate contracts with TPPs and PBMs, and data relating to rebates. But, GSK has already produced:

- sales data from GSK's order management and direct sales system, including records of direct U.S. sales, credits, samples, returns, and adjustments;

- contracted sales and rebate data from GSK's internal systems, including records of contracted sales, chargebacks, rebates, and administrative fees for Wellbutrin XL according to GSK's contracts with its customers;

- dozens of rebate contracts with PBMs and TPPs, including numerous contracts with PBMs Caremark, Express Scripts, and Medco (*i.e.*, "Big Three"), which you represented to the Court were the largest PBMs in the United States and were involved in a large number of transactions at issue;

- data regarding utilization of Wellbutrin XL by TPP customers (*e.g.*, PBMs, large insurers, self-funded groups) who have contracts with GSK under which they earn rebates based on, among other things, the market share of drug utilization by their members and enrollees;

- several iterations of IMS sales and prescription data, which plaintiffs already requested and plaintiffs' experts have utilized in this case;[1] and

---

[1] Indeed, new Request No. 15 repeats almost verbatim Request No. 62 that plaintiffs served in September 2009 relating to IMS data. Dr. Meredith Rosenthal also relied on IMS data that

DMEAST #20156746 v2

Kenneth Wexler
Peter St. Phillip, Jr.
Joe P. Leniski, Jr.
October 23, 2014
Page 3

- a wide range of marketing plans, analyses, and strategic information relating to Wellbutrin XL, including annual brand plans for Wellbutrin XL.

Similarly, plaintiffs have already deposed GSK witnesses on the topics listed in plaintiffs' October 22, 2014 Rule 30(b)(6) subpoena. Plaintiffs previously deposed multiple GSK witnesses regarding the "pricing of Wellbutrin XL . . . including . . . rebates," and "contracts for the sale of Wellbutrin XL." (*See* IPP Dep. Notice (Nov. 19, 2009).) Indeed, Mr. Wexler deposed Jamey Millar (GSK's Vice President, Institutional Business and former Vice President, Strategic Pricing, Contracting and Managed Markets) about a wide range of topics pertaining to TPPs, such as GSK's understanding of TPP plan designs, GSK's discounting to TPPs, pricing studies for Wellbutrin XL, and GSK's reliance on IMS and Wolters Kluwer pharmaceutical data. Further, plaintiffs deposed nearly twenty GSK witnesses during the course of this litigation.

You also request several categories of documents relating to Dr. Strombom, including his work product, reports he submitted in other cases, deposition testimony given in other cases, and materials from other cases. Production of most of these documents is prohibited by the stipulated Order on expert discovery, which precludes discovery of, among other things, "notes, drafts or expert reports, or other types of preliminary work created by or for testifying experts" and "communications between parties and testifying experts." (No. 08-2433, ECF No. 96.) Dr. Strombom's reports and testimony from other cases are subject to confidentiality restrictions in those litigations and also beyond the scope of Rule 26. *See, e.g., In re Air Crash Disaster at Stapleton Int'l Airport*, 720 F. Supp. 1442, 1444-45 (D. Colo. 1988) ("[T]he limited scope of a Rule 26(b)(4)(A) inquiry into the background and experience of an expert witness does not include the production of every deposition or trial transcript given by the expert in any litigation."). Similarly, plaintiffs offer no justification for seeking discovery relating to Dr. Strombom's other engagements, compensation arrangements, and prior testimony and writings, which bear no relationship to this litigation, and lie well beyond the information required under Fed. R. Civ. P. 26(a)(2)(B). *See, e.g., Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 235 (D. Minn. 2013) (upholding a protective order where subpoena requested documents related to expert beyond those identified for mandatory disclosure in Rule 26).[2]

---

GSK produced. *See* July 22, 2011 Declaration of Meredith Rosenthal, n. 62 ("This chart is based on IMS NPA data provided by GSK in this litigation. It contains a number of drugs categorized as 'antidepressants.'").

[2] That said, there is no retention agreement responsive to RFP No. 5. Separately, plaintiffs' request for every "paper or presentation Dr. Strombom contributed to within the last five years" (RFP No. 9) is overly broad. GSK will produce copies of the paper plaintiffs identified in the document requests and any other paper that appears to be potentially relevant to the issues raised in GSK's motion. Production of any documents is contingent upon plaintiffs' agreement to produce the same materials for their experts.

DMEAST #20156746 v2

Kenneth Wexler
Peter St. Phillip, Jr.
Joe P. Leniski, Jr.
October 23, 2014
Page 4

### Stipulation Regarding Schedule

On October 21, 2014 (per the Court's directive at the October 17, 2014 conference), GSK proposed a schedule to plaintiffs for discovery relating to the decertification motion. GSK drafted this proposal based on the Court's concerns about a protracted schedule and plaintiffs' representations to the Court that a protracted schedule was unnecessary. Plaintiffs' counterproposal ignores specific commitments made by plaintiffs to the Court. Specifically, you represented to the Court that plaintiffs would file their opposition to GSK's Motion to Decertify by March 1, 2015.[3] Your counterproposal, however, provides that plaintiffs' opposition should be due April 30, 2015—effectively adding two months to the schedule.

### Dr. Strombom's Deposition

We have received your request to take Dr. Strombom's deposition on December 30. We do not see why it needs to be taken during the holidays, as you have already had the report for over six weeks and there remains plenty of time between now and then to complete his deposition. In any event, Dr. Strombom is not available on that date. Assuming you wish to proceed in December (and not earlier), he is available from December 8 through 11 and from December 15 through 17. Please let us know which date you prefer.

***

Before seeking relief from the Court regarding plaintiffs' discovery requests and proposed schedule, we would like to meet and confer tomorrow, Friday, October 24, 2014. Please let us know your availability for a phone call.

Sincerely,

Leslie E. John

cc:   All Co-Lead Counsel for the Indirect Purchaser Class

---

[3]   March 1, 2015 is a Sunday, which is why GSK proposed March 2, 2015 in the stipulation.

DMEAST #20156746 v2