# EXHIBIT 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re WELLBUTRIN XL ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>INDIRECT PURCHASER ACTION | Civil Action No.: 2:08-cv-2433<br><br>Honorable Mary A. McLaughlin |

## INDIRECT PURCHASER CLASS PLAINTIFFS' REQUESTS TO ADMIT FACTS TO GSK

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, the Indirect Purchaser Class Plaintiffs, by their undersigned attorneys, hereby request that Defendants SmithKline Beecham Corporation d/b/a GlaxoSmithKline and GlaxoSmithKline plc (together,"GSK"), admit or deny the following statements of fact within 30 days from the date hereof:

1. Pharmacy benefit managers ("PBMs") perform claims administration services for their customers.

2. PBMs' customers consist of insurers, health and welfare plans, plan sponsors, self-insured employers, and others who are responsible for paying pharmacy benefits on behalf of their members, their members' families, employees, insureds, participants, and/or beneficiaries.

3. PBM customers are known in the industry as payers, third-party payors, or "TPPs" for short.

4. Unless an individual consumer pays cash for the entire drug purchase, TPPs and insured consumers share the obligation to pay 100% of the retail pharmacy counter or mail order purchase price of a drug.

5.  A "Capitation Contract" is one under which a health plan pays a PBM a per member per month flat fee in exchange for the PBM bearing price risk for each insured transaction.

6.  If a PBM were to operate pursuant to a Capitation Contract, the PBM would be acting as an insurance company and would thus fall into the definition of a TPP.

7.  Capitation Contracts have not been used by PBMs since before the Class Period (defined in the Court's Class Certification Order dated August 12, 2011, Dkt. No. 353).

8.  Instead of Capitation Contracts, PBMs employ an Administrative Services Only (ASO) business model, providing administrative services to TPPs in exchange for various forms of compensation, including claims-processing fees.

9.  The administrative services to be provided by PBMs are defined in the contracts between PBMs and TPPs.

10. Contracts between PBMs and TPPs govern what administrative services are provided by the PBM and what the TPP pays the PBM for those services.

11. PBM contracts do not affect the contractual relationship between a TPP and its insured members and/or beneficiaries insofar as cost-sharing for the purchase of Wellbutrin XL ("WXL") or its AB-rated generic equivalent is concerned.

12. Once an insured consumer fills a WXL prescription, he or she is obligated to pay the co-pay or coinsurance dictated by his or her insurance contract with his or her TPP and, by virtue of the same contract, the TPP is obligated to pay the balance.

13. PBMs do not contract directly with insured consumers of TPPs, and therefore have no contractual obligation, at any time, to pay anything on behalf of insured consumers.

14. Neither TPPs nor PBMs deduct guaranteed rebates or ingredient costs from the payment sent to the pharmacies.

15. Rebates paid to PBMs and managed care organizations ("MCOs") in connection with WXL are paid after the purchase transaction has occurred at the pharmacy counter or through mail order.

16. Rebates paid to PBMs and MCOs in connection with WXL are calculated based on the amount of WXL purchased by a PBM's TPP customers that maintain formularies that place WXL in a favorable position relative to other drugs and the sales performance of WXL relative to other prescription medications.

17. There was during the Class Period (defined in the Court's Class Certification Order dated August 12, 2011, Dkt. No. 353), a near-universally accepted electronic data interchange standard for pharmacy claims transmission and adjudication in the United States.

18. This standard is maintained by the National Council for Prescription Drug Programs ("NCPDP").

19. GSK was a member of the NCPDP during the Class Period (defined in the Court's Class Certification Order dated August 12, 2011, Dkt. No. 353).

20. Observation of the NCPDP standards allows 99% of TPP prescription claims to be adjudicated in real time at the point of sale—the retail or mail order pharmacy.

21. When a pharmacy fills a TPP prescription, it collects patient-specific information, generally electronically from a health insurance card that acts similarly to a credit card, which inputs the required patient, drug and prescriber data into the pharmacy's point of sale system.

22. The information collected by a pharmacy reveals within seconds whether a patient is eligible for the drug, and the patient's drug benefit information, including the amount of

copayment or coinsurance that is owed by the patient, and any clinical information relative to the patient's use of the drug.

23. If the drug is covered by a patient's TPP insurance plan, the pharmacy claim is adjudicated within seconds and the pharmacist collects the patient's portion of the retail price dictated by his or her TPP contract and charges the TPP for the balance of the transaction price.

24. The NCPDP has established standard data formats for the transmission of prescription drug data ("Rebate Data") from Pharmacy Management Organizations (generally PBMs) to Pharmaceutical Industry Contracting Organizations (generally pharmaceutical manufacturers with rebate contracts with PBMs). This standard was known during the Class Period (defined in the Court's Class Certification Order dated August 12, 2011, Dkt. No. 353), as the Manufacturer Rebates, Utilization, Plan, Formulary and Market Basket Flat File Standard ("Rebate Data Standard").

25. GSK and the PBMs with which it contracted for rebates during the Class Period (defined in the Court's Class Certification Order dated August 12, 2011, Dkt. No. 353), adhered to the NCPDP Rebate Data Standard when transmitting Rebate Data.

26. Prior to paying rebates to PBMs, GSK received and reconciled the Rebate Data it received from a PBM to ensure that the payment data corresponded to the proper amounts of rebates owed to that PBM.

27. The Rebate Data conforming to the Rebate Data Standard that GSK received and reviewed during the Class Period (defined in the Court's Class Certification Order dated August 12, 2011, Dkt. No. 353), contained transaction level detail (information for each pharmacy claim) that revealed the amount of money paid by a TPP and its members pursuant to the

copayment or coinsurance set out in the plan design, the formulary status, the name of the TPP, and a variety of other information specific to each pharmacy transaction for WXL.

28. The NCPDP Rebate Data, combined with the detailed pharmacy records electronically maintained by pharmacists, TPPs, PBMs and others capture information concerning every drug transaction by which every TPP and consumer paying for WXL or its AB-rated generic equivalents can be identified, as well as the amounts paid by each TPP and consumer for each prescription of WXL and its AB-rated generic bioequivalents during the Class Period (defined in the Court's Class Certification Order dated August 12, 2011, Dkt. No. 353).

29. GSK was not obligated to, and did not, pay rebates for purchases of WXL after the date that AB-rated generic bioequivalent versions were introduced into the market..

30. Drug purchases at the pharmacy counter or through mail order are documented at the pharmacy, which maintains records reflecting the identity of the consumer and what they paid, whether it is a co-pay or the full purchase price of WXL or its AB-rated generic equivalents.

31. If a consumer is insured, his or her insurance card carries the group number that identifies the applicable plan when the claim is adjudicated by the PBM during the transaction at the pharmacy.

32. If a consumer is not insured, a pharmacy takes and records the consumer's prescription and records all identifying information with the respect to the transaction, including the name of the consumer and the drug purchased.

33. When a consumer is insured and its insurer uses the services of a PBM, the PBM adjudicates the claim by reference to the TPP, the applicable insurance plan, the identity of the consumer/insured, and what amount is owed respectively to the pharmacy by the TPP and

consumer under their contractual relationship: This identifying information is maintained by the PBM in its claim processing records.

34. Sometimes, large insurers do not utilize PBMs, acting instead much like their own PBMs.

35. Large insurers that do not utilize PBMs adjudicate their own claims occurring at the pharmacy, and maintain claims processing records identifying the insurer TPP and insured consumer for WXL or its AB-rated generic equivalent transactions.

36. Electronic pharmacy data captured by PBMs, TPPs, retail pharmacies, mail order pharmacies and GSK contains objective information about the identities of TPPs and insured consumers in the Class (defined in the Court's Class Certification Order dated August 12, 2011, Dkt. No. 353).

37. The information captured by electronic pharmacy data is known to and/or is in the possession of PBMs, TPPs, retail pharmacies, mail order pharmacies and GSK.

Dated: November 28, 2014

          **LOWEY DANNENBERG COHEN & HART, P.C.**

          By: /s/ Peter St. Phillip, Jr.
              Richard W. Cohen
              Peter D. St. Phillip, Jr.
              Gerald Lawrence
              Uriel Rabinovitz
              One North Broadway
              White Plains, NY 10601-2310
              Tel: (914) 997-0500
              Email: PStphillip@lowey.com

          **WEXLER WALLACE LLP**

          By: /s/ Kenneth A. Wexler
              Kenneth A. Wexler
              Thomas A. Doyle
              Amber M. Nesbitt
              Justin N. Boley
              55 W. Monroe Street, Suite 3300

                    Chicago, IL  60603
                    Tel:  (312) 346-2222

**BRANSTETTER STRANCH & JENNINGS PLLC**

By: /s/ James G. Stranch, III
     James G. Stranch, III
     R. Jan Jennings
     J. Gerard Stranch, IV
     Joe P. Leniski
     227 Second Avenue North, 4th Floor
     Nashville, TN  37201-1631
     Tel:  (615) 254-8801

*Indirect Purchaser Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2014, a copy of the foregoing was served on the following attorneys via electronic mail:

Leslie E. John
johnL@ballardspahr.com
Stephen Kastenberg
kastenberg@ballardspahr.com
Jason Leckerman
leckermanJ@ballardspahr.com

**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 665-8500
Facsimile: (215) 864-8999

*Attorneys for Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline And GlaxoSmithKline plc*

/s/ Noelle Ruggiero